KEMP v. SUTTON.

KEMP v. KEMP.

1. WILLS — CONSTRUCTION—"ABOVE NAMED DEVISEES" MEANS THE SAME IN DIFFERENT CLAUSES.

Where the designation "the above named devisees," as used in the eighth clause of a will, was given a meaning, and could not have included testator's brother, because he had not theretofore been mentioned in the will, he was not included in said designation as used in the ninth clause, although by the eighth clause he was given a life estate.[1]

2. SAME—INTENT.

No intention being shown in the context to change the meaning of a term as first used in a will, it will be given the same meaning on repetition in a subsequent clause.[2]

3. SAME—DEVISE OF FEE TO CITY ON TERMINATION OF LIFE ESTATE NOT CREATION OF A TRUST.

Where a will devised to testator's widow and sons, who were all mature persons, a life interest in certain land with the personal right of possession and management,

---

[1]Wills, 40 Cyc. p. 1403; [2]Id., 40 Cyc. p. 1403.

and providing that on the death of each life tenant his interest should terminate, and on the death of the last survivor the fee to go to a certain city, it may not be said that the will created a trust because it charged the life tenants with the payment of the taxes, expenses of repair and insurance out of the income.[3]

4. SAME—RULE OF CROSS-REMAINDERS NOT OPERATIVE IN JOINT TENANCY.

The rule of cross-remainders does not operate in case of joint tenancy, for joint tenants have one and the same interest, accruing by one and the same conveyance, commencing at one and the same time, and have the same possession.[4]

5. SAME—JOINT TENANCY NOT ABOLISHED.

Under 3 Comp. Laws 1915, §§ 11561-11563, joint tenancy is not abolished in this State, but devises of lands to two or more persons must be construed to create estates in common unless expressly declared to be in joint tenancy, except as to mortgages, devises or grants in trust, or to executors or to husband and wife.[5]

6. SAME—JOINT TENANCY MAY BE CREATED.

Although testator did not employ the term "joint tenancy," his expressly declared purpose, by apt provision, creating a joint tenancy, should prevail, unless the statute requires that the tenancy be construed as one in common in spite of the terms of the devise.[6]

7. SAME—DEVISE CREATING JOINT TENANCY EXCLUDES TENANCY IN COMMON BY CONSTRUCTION.

If a devise creates a joint tenancy clearly and unequivocally, it excludes a tenancy in common by construction.[7]

8. PERPETUITIES—DEVISE OF LIFE ESTATE TO CLASS COLLECTIVELY No VIOLATION OF RULE AGAINST PERPETUITIES—STATUTES.

A devise of land to testator's widow and sons, who were all mature persons, for life, and, on the death of the last survivor, the fee to a certain city, was a devise to a class collectively, which constituted but one life in being, and, therefore, there was no unlawful suspension of the power of alienation, but even if the rule against perpetuities was violated by said devise to the city, it would be valid under 1 Comp. Laws 1915, § 3301.[8]

---

[3]Wills, 40 Cyc. p. 1743 (Anno); [4]Estates, 21 C. J. § 139 (Anno); Joint Tenancy, 33 C. J. § 9; [5]Joint Tenancy, 33 C. J. §§ 3, 5; Wills 40 Cyc. p. 1636; [6]Id., 33 C. J. § 5; [7]Id., 33 C. J. § 6; [8]Perpetuities, 30 Cyc. p. 1485; Wills, 40 Cyc. p. 1475.

9. REMAINDERS—REMAINDERMAN WITH TENANT OF PRECEDING ESTATE MAY CONVEY FEE.

> A remainderman in fee, by joining with the tenant of the preceding estate, may convey an absolute and indefeasible title in fee simple.[9]

Cross-appeals from Chippewa; Fead (Louis H.), J. Submitted October 21, 1925. (Docket No. 69.) Decided December 22, 1925.

Bill by Lewis D. Kemp against Elmer S. B. Sutton, executor of the last will of George Kemp, deceased, and others for construction of a will. Harry B. Kemp and others filed a cross-bill against Lewis D. Kemp, the city of Sault Ste. Marie, and others for affirmative relief. From the decree rendered, plaintiff and cross-plaintiffs appeal. Affirmed.

*Albert E. Sharpe,* for plaintiff.

*McDonald & Kaltz,* for cross-plaintiffs.

*E. S. B. Sutton, in pro. per.*

*Herbert W. Runnels,* City Attorney, and *Butterfield, Keeney & Amberg,* for defendant city.

WIEST, J. The bill herein was filed to obtain construction of the will of George Kemp, deceased. Plaintiff claims he is one of the devisees of the personal property and entitled as such to a distributive share of the estate. The sons of the testator insist they are the sole surviving devisees, and, by answer in the nature of a cross-bill, assert the devise of real estate to the city of Sault Ste. Marie, subject to a life estate, is void because power of alienation is suspended beyond two lives in being, and, therefore, they take as heirs at law. This brought the city to court with the claim that the will is valid.

---

[9] Estates, 21 C. J. § 155.

George Kemp, testator, died February 12, 1923, leaving a widow and three sons. The sons are all of mature years. June 7, 1915, he made his will, writing it himself, with the aid of, but not following, a draft prepared by an attorney. He was then, and at the time of his death, the owner of two valuable docks and two slips in the city of Sault Ste. Marie, one a freight and passenger dock with a large warehouse, office and baggage room, and the other a coal dock with equipment. He also owned certain other property hereinafter mentioned, but not here involved. To fully understand the issues it seems necessary to state in full the provisions of the will before us for construction.

In the second clause of the will he directed that the dock property be preserved intact, and devised to his wife and four sons, then living, one of the sons having died before testator:

"A life interest in said estate and use only, to each in and to the same for, and during the natural life of each, and to share and have of the same in the manner hereinafter devised and bequeathed to each; and to enjoy and possess the same for and during their said natural lives and also the income thereof, to be divided between them, after the payment of all running and repair expenses; in manner following, viz.: My said wife, Viola F. Kemp, to be paid one-third of the net income thereof; and after that is paid, then the balance of the said income from the said lands and property to be divided equally, between my said wife, Viola F. Kemp, and my above-named sons, share and share alike, the same to be ascertained and so paid to them as above set out yearly. Further that upon the death of my said wife, then my said sons then alive to have, hold and enjoy the said portion herein bequeathed to her, share and share alike. Further, that upon the death of any of my said sons before the death of my wife; then in that event the estate, interest and portion of such deceased son or sons shall be divided between the survivors thereof in the same proportions as herein in this will mentioned. And at the death of any of

my said sons, after the death of my said wife, then in that event the surviving sons to have, hold and enjoy all of the use, estate and income of said property, share and share alike; and as the death of the said sons occur the survivors or survivor is to take, hold and enjoy the whole of the use, estate and income thereof until his death; and at the death of the last of the above-named devisees, then I hereby bequeath, devise and give the said above-mentioned property to the city of Sault Ste. Marie, Chippewa county, State of Michigan, together with all of the warehouses, and improvements thereon, in fee simple, and to have, to hold the same forever and the same to be used for municipal uses of said city, and cannot be devoted for other purposes—and all to be under the direction of the common council of the said city or other supreme legislative authority, should the said city then have no body known as the common council."

In the fourth clause he charged the life tenants and the property with the following obligations:

"The said devisees above mentioned and each of them is charged, and I do charge especially the above mentioned property with the payment of all taxes and running expenses of the said property, and the same to be paid yearly from the said income thereof, also there is to be paid from the said income all repairs and any renewals, to the end that the structures and improvements shall at all times be in good repair and the same shall at all times be kept insured in responsible fire insurance companies and as aforesaid that after all payments for overhead charges and running expenses and other expenses as herein set out; then the remainder of the said income and use thereof, shall be divided as herein set out."

In the fifth clause he provided:

"I further order and direct as a condition precedent to the enjoyment, devise and ownership and use of the life estates and interests herein devised, that each and all of the said devisees above named are absolutely prohibited, from in any wise selling, mortgaging or incumbering, in any manner whatever, any part or portion of the said property above devised to them and

each of them, and upon any violation of the same by any or all of the said devisees as to the same in this item set out; then I direct that each devisee or devisees so violating this item shall forfeit the share and portion herein devised to them and the same shall revert to, and become the property of the other devisees above mentioned in the shares and under the terms herein set out in this my will."

The sixth clause provided:

"I hereby direct as each devisee hereinbefore mentioned shall die, then his or her estate, interest and use in and to the said property dies with him or her, and the survivors of them take the same as herein directed; and I hereby prohibit any heir of any kind or degree, of any and all of the aforesaid devisees from having or owning any interest, estate, portion or part whatever of the above devised property for the end and purpose that at the death of the last of the said above-mentioned devisees, that the said property shall revert to and become the property of the said city of Sault Ste. Marie, unimpaired and whole as an estate of entirety to said city."

The seventh clause provided:

"I direct that if any taxes become due and unpaid and all other indebtedness that may become or is a lien against the said property mentioned in item 'Second' of this will that the said city of Sault Ste. Marie through its proper officer is authorized to take such action as it may deem necessary to protect said property from being condemned or sold for any of said liens above mentioned and said city of Sault Ste. Marie is hereby authorized and directed to take actual possession of the said property mentioned in paragraph or item 'Second' of this will and administer the same until the necessary funds are raised, and the said liens paid and satisfied; as said devisees have only a·life interest or estate in said property so devised to said city; and each and all of them are hereby prohibited from purchasing any goods or merchandise or other things or rebuilding or repairing said property or any part thereof, that would be a lien on or bind the said property or any part thereof

for the payment of the same, they each being only a life tenant, and all to the ultimate end and purpose, that said property shall become the property of the said city of Sault Ste. Marie at the time and in the manner herein set out."

The eighth clause provided:

"I hereby devise, bequeath and give unto my brother, Lewis D. Kemp, the use and income of lots No. 17, 18, 19, 20, 21, 22, 23, 24, block 2, of Scranton's and Robertson's addition to the city of Sault Ste. Marie, Chippewa county, Michigan, for and during his natural lifetime, and charge him with paying all taxes due thereon, and at his death the said property to become and I hereby devise the same in fee to the above named devisees in this will who may be alive at my death, share and share alike."

The ninth clause, and the one under which plaintiff claims a share of the personal estate, reads as follows:

"I hereby devise, give and bequeath unto all of the above named devisees in this my will contained, who shall be alive at my death all of my personal property as insurance moneys, bonds, stocks, etc., etc., herein not specified and particularly devised, after all my debts are paid, share and share alike to have and to hold the same as their own."

We will first consider the claim of Lewis D. Kemp, plaintiff. In the eighth clause of the will it will be noted that plaintiff was given a life estate in certain property, "and at his death the said property to become and I hereby devise the same in fee to the above named devisees in this will who may be alive at my death, share and share alike." Up to this point plaintiff had not been mentioned in the will. There is no mistaking the identity of "the above named devisees" intended in this clause; they had been mentioned before and as they did not come to the use and enjoyment of the property until the death of Lewis D. Kemp, the tenant for life, Lewis D. Kemp was expressly excluded from being counted among

"the above named devisees." Having so clearly
employed the designation "the above named devisees"
in the eighth clause of the will, did he repeat it in
the same or in a different sense in the ninth clause
under which plaintiff makes claim? The designa-
tion of devisees in the ninth clause immediately follows
the designation in the eighth clause and is, in purpose
and effect, the same designation. The eighth clause
speaks of "the above named devisees" and, as we have
said, clearly excluded plaintiff. The ninth clause,
while it speaks of "all of the above named devisees"
(plaintiff having been devised a life estate), carried
no different meaning than the term in the eighth clause
and showed no intention to include plaintiff. Having
given the term a meaning in the eighth clause to the
exclusion of Lewis D. Kemp, the same meaning at-
tached to its repetition in the ninth clause, unless
the context shows a different intention. We discover
no such change in intention. If the term, as em-
ployed in the ninth clause, means *all* the devisees
previously mentioned in the will, then it is inclusive
of the city. No one claims the city was so intended,
and by no possibility can it be so included. Through-
out the will the like term is repeatedly employed and
in each instance is clearly inclusive only of the widow
and sons. The ninth clause does not give plaintiff
anything.

It is contended by the three sons, the surviving life
tenants, the widow having died, that the provision of
the will charging the life tenants and the property
with the payment of taxes, expenses of repairs and
insurance out of the income, together with division
of the remainder of the income between the tenants,
creates a trust, and also with cross-remainders be-
tween the life tenants there is suspension of the power
of alienation beyond two lives in being. It is also
contended that each life tenant must be counted as

a life in being, and, so counted, there were four lives before the widow died and now are three lives in being between testator and the city.    This will creates no trust.    It would tax ingenuity too far to imagine occasion for or to map out the duties of a trustee, and besides would interfere with the personal right of possession and management devised directly to life tenants who are all of mature years.    If the tenants of the life estate perform the obligations imposed then they are not subject to interference by any one.    In case of their failure to perform the will provides a means of securing performance, by possession of the fee remainderman and employment of revenues to that end and then return of possession to the life tenants. This power provided to secure performance is an allowable method with legitimate means for its accomplishment.    We find no trust involved here pending the use of the property by the city for municipal purposes.    We decline to define, at this time, such municipal purposes.

Much could have been omitted from the will and left to the administrative care of the law, but there is no harm in its inclusion and no serious complications worked thereby.    The life tenants are known, their rights clearly defined and, at the death of the last survivor, the tenancy ends and the city, as fee owner, will come to possession.    The fee in the city is vested, subject to no contingency and not upon any condition, except to use the property for municipal purposes.    There being no trust, no occasion for a trust, and no *cestui que trust,* renders the fact that there were several persons entitled to enjoy the life estate of no moment.    No suspension of power of alienation is here involved.    The fee is vested in the city subject only to the life estate in the sons.    The life tenants are joint holders.    They count as a class and in the eye of the law as one life in being.    There

233—Mich.—17.

can be no additions to their number; death will lessen the number from time to time, but no accession or succession will follow, and with the death of the last surviving son the city will, under the fee now vested in it, have right of possession.

The rule of cross-remainders does not operate in case of joint tenancy. For "joint tenants have one and the same interest; accruing by one and the same conveyance; commencing at one and the same time; and have the same possession." 2 Bouv. Inst. 305. Joint tenancy is not abolished in this State (3 Comp. Laws 1915, § 11561). But devises of land to two or more persons must be construed to create estates in common unless expressly declared to be in joint tenancy, except as to mortgages, devises or grants in trust, or to executors or to husband and wife (3 Comp. Laws, §§ 11562, 11563).

While the common-law right of survivorship, saving as above mentioned, has been abolished in this State, survivorship among a class can still be constituted a condition of the estate by express provision to that end. Did testator expressly declare the life estate to be in joint tenancy? It is true he did not employ the term "joint tenancy" but we do not consider such to be the test. He expressly declared his purpose, and, by apt provision, created a joint tenancy and this should prevail unless the statute requires that the tenancy be construed as one in common in spite of the terms of the devise and because testator did not attach the talismanic words "this is a joint tenancy."

The Illinois statute, in effect, is like ours and in *Cover* v. *James*, 217 Ill. 309 (75 N. E. 490), it was held not essential to the creation of a joint tenancy to expressly declare the estate is to pass "not in tenancy in common but in joint tenancy." There is but one life estate ahead of possession by the fee owner. This life estate cannot be split into several under the

doctrine of cross-remainders and thereby bring to bear
the rule against suspension of alienation beyond two
lives in being.    There is such unity of possession
and of interest under the one devise and its express
limitations as to forbid.    The life tenants are known,
their rights clearly defined, with unity of possession,
unity of interest, unity of time of commencement of
the tenancy with an express provision that the death
of any one continues the tenancy in the others and,
at the death of the last one, tenancy ends and the
city, as fee owner, comes to possession.    The doctrine
of cross-remainders had its rise in difficulties ex-
perienced with reference to estates in common.    If a
devise creates a joint tenancy clearly and unequivocally
it excludes a tenancy in common by construction.

At the death of testator all the life tenants were
in being; the devise to the city *eo instante* became a
vested remainder, not to be devested by death of life
tenants and application of the doctrine of cross-
remainders.    The doctrine of cross-remainders evi-
dently originated to permit the carrying out of the
clear intent of a testator to maintain the body of an
estate intact during a particular estate, such as for
life.    It is court evolved law resting, if necessary, in
cases of testamentary devises, on implication and
carries, in effect, the rule of survivorship applicable
to joint tenancy at common law to tenancy in common,
to avoid defeating the clear intention of a testator.
Of course, a testator may expressly provide the same
thing in a devise, and thereby avoid the necessity of
resort to implication.    The result, however, whether
by implication or by express provision, is to limit
the particular estate to the class designated, prevent
accessions thereto or separation of joint interests by
division and strictly confines the estate to the life of
the last survivor of the designated class.

Possession under this will comes to the city by virtue

of its vested estate at the death of the last surviving tenant.    As was said in *Smith's Appeal*, 88 Pa. St. 492:

> "It matters not how many lives there may be so that the candles are all burning at the same time, for the life of the longest liver is but a single life."

See 2 Alexander on Wills, § 1158.    Such rule was announced upward of two and a half centuries ago. See 1 Siderfin, 451.    To hold otherwise would permit a life estate to two children and prohibit such an estate to three or more children.    If a man has nine children and, by will, devises all nine a life estate, with fee vested in a remainderman, the nine constitute a class; their heads are not counted in determining lives in being, for they constitute collectively but one life, that of the longest liver, between the devisor and the devisee of the fee in remainder.    See *Allen* v. *Merrill*, 223 Mich. 467, 472.    The estate in the city is a vested remainder.    *Rood* v. *Hovey*, 50 Mich. 395; *Porter* v. *Porter*, 50 Mich. 456; *In re Shumway's Estate*, 194 Mich. 245 (L. R. A. 1918A, 578); *In re Patterson's Estate*, 227 Mich. 486.    In the devise to the city there are no conditions subsequent.    The fee is in the city free from any possible forfeiture.    While the express purpose of the testator should guide the city, it does not operate as a legal restraint upon alienation by the city but a moral restraint upon departure from the faith reposed by the testator in the city.    The whole scheme of the will was to bring the dock property intact to the remainderman.    The city has an undoubted legal right to convey the fee, subject, of course, to the life estate.    And if such a conveyance should be made there is nothing in the will to prevent, and the law would permit the life tenants to release to such a purchaser their life estate.    Or the city could join with the life tenants and convey a title in fee simple.

"A remainderman in fee, by joining with the tenant of the preceding estate, may convey an absolute and indefeasible title in fee simple." 21 C. J. p. 998.

So there are persons in being who can now convey title, and there is no suspension of alienation.

It is clear, from what we have said, that there is no merit in the contentions advanced by the sons of the testator.

The devise to the city is valid (1 Comp. Laws 1915, § 3301). It does not violate the rule against perpetuities, but even if so it would, under the statute just cited, be valid.

The learned circuit judge, in a carefully prepared opinion, reached the conclusions we have announced.

The decree in the circuit is affirmed, with costs to the estate against the plaintiff and cross-plaintiffs, and to the city against the cross-plaintiffs.

McDONALD, C. J., and CLARK, BIRD, MOORE, and FELLOWS, JJ., concurred. STEERE, J., took no part in this decision. SHARPE, J., did not sit.