RENDLE v. WIEMEYER.

1. JUDGMENT—DEFAULT—PARTIES.

A default judgment may not properly be entered against non-appearing or nonanswering original and cross-defendants in a case involving relief by way of accounting, partition, and quieting title to land, where the complexities of the situation require a presentment of full proofs in order to do justice to the rights and liabilities of all parties, appearing or not.

2. WILLS—CONSTRUCTION—LIFE ESTATES—REMAINDERS.

Will whereby testator left all his property to his wife for life, then to his children, naming them, "in equal shares for their use and support, during their lifetime, and after their death, it shall become the property of my grandchildren in equal

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 30A Am Jur, Judgments § 199.
[2, 6] 57 Am Jur, Wills § 1265.
[3, 4] 41 Am Jur, Perpetuities and Restraints on Alienation § 14.
[5] 33 Am Jur, Life Estates, Remainders, and Reversions § 177.
[7–10, 12, 16] 33 Am Jur, Life Estates, Remainders, and Reversions § 65 et seq.
[11] 57 Am Jur, Wills § 1133.
[13] 3 Am Jur 2d, Adverse Possession § 225.
  What acts, claims, circumstances, instruments, color of title, judgment, or thing of record will ground adverse possession in a life tenant as against remaindermen or reversioners. 58 ALR2d 299.
[14] 33 Am Jur, Life Estates, Remainders, and Reversions §§ 207–210.
[15] 30A Am Jur, Judgments § 397.
[17, 18] 5 Am Jur 2d, Appeal and Error § 962.
[19] 14 Am Jur, Cotenancy § 14; 16 Am Jur, Deeds § 330.
[20] 40 Am Jur, Partition §§ 107, 108.
  Right to, and effect of, partition of undivided interests held respectively in fee and in life estate with remainder. 12 ALR 644, 134 ALR 661.

shares" clearly vested a life estate in testator's wife, a life estate in the remainder thereof in his children, and fee title in remainder in the grandchildren, either per capita or per stirpes.

3. PERPETUITIES—DEVISE OF LIFE ESTATE TO CLASS COLLECTIVELY—ESTATE FOR 1 LIFE ONLY.

Devise of a life estate to a class collectively creates an estate for 1 life only, that of the longest liver of the class, and is to be so taken in determining the period of suspension of the power of alienation (CL 1948, § 554.15).

4. SAME—LIFE ESTATES—SUSPENSION OF POWER OF ALIENATION.

Devise of life estate in farm to testator's wife, then after her death to testator's 5 children for their lives, and after their death to testator's grandchildren, was not an unlawful suspension of the absolute power of alienation for a longer period than 2 lives in being, since the devise to his children was for 1 life only, that of the longest liver (CL 1948, § 554.15).

5. PARTITION—LIFE TENANTS—QUITCLAIM DEED.

Partition proceedings between testator's 5 children and quitclaim deed given by 1 child to the others were void, where the children merely had a life estate in the remainder after termination of life estate of testator's widow and each of the children had children of their own who had not participated in the partition proceedings or deed, and were vested with fee title in remainder.

6. WILLS—CONSTRUCTION—LIFE ESTATES—REMAINDERS.

Will devising testator's entire real and personal property to wife for life, to his 5 named children "in equal shares for their use and support, during their lifetime, and after their death, it shall become the property of my grandchildren in equal shares" devised grandchildren vested remainders in fee simple subject to open.

7. REMAINDERS—VESTING.

A remainder is vested when it is given to ascertained persons, or to a class of which 1 or more is in existence and ascertained, not subject to any condition precedent to enjoyment other than termination of an intermediate or precedent estate (CL 1948, § 554.13).

8. SAME—VESTING SUBJECT TO OPEN.

A remainder vested subject to open vests initially in ascertained members of a class as representatives of the entire class, and those subsequently entering the class may also be said to have,

upon entrance to the class, a vested remainder (CL 1948, § 554.13).

9. SAME—DEATH OF REMAINDERMAN PRIOR TO TERMINATION OF PRECEDENT LIFE ESTATE.

The possibility that a grandchild remainderman living at testator's death or born thereafter, might die prior to the termination of the precedent life estates does not prevent the remainderman from taking a vested estate (CL 1948, § 554.13).

10. SAME—VESTED REMAINDER SUBJECT TO OPEN.

A vested remainder subject to open is subject to devise or descent to the remainderman's children, since it includes a certainty of becoming a present interest of the remainderman, his heirs, or devisees, as to some share in the affected thing and of continuing to be a present interest as to such share thereafter.

11. WILLS—CONSTRUCTION—INTENT.

Intent of the testator is the goal sought to be effectuated by courts, when construing a will, within pertinent precedential and statutory limits.

12. SAME—JOINT LIFE ESTATES—VESTED PER CAPITA REMAINDER.

Testator's devise of all his real and personal property, following life estates to his wife and 5 named children, to his "grandchildren in equal shares" effected a devise of an equal remainder in his grandchildren on a per capita basis upon the termination of the precedent life estates, where there was no express declaration of joint tenancy although the life estate in the children is construed as a joint tenancy in view of the testamentary language with respect thereto (CL 1948, § 554.44).

13. LIFE ESTATES—REMAINDERMAN—POSSESSION.

A life tenant's possession is not adverse to a remainderman.

14. REAL ACTIONS—RIGHT OF ENTRY—LIFE TENANTS.

The right of entry of testator's grandchildren who had been granted a fee title in remainder upon death of testator's 5 children, accrued upon death of the last preceding life tenant having an interest in the property, and such right of entry may be exercised within 15 years, not being limited to a 5-year period (CL 1948, § 609.1).

15. JUDGMENT—RES JUDICATA—PARTIES.

Judgment in action involving determination between others than parties to instant suit which included relief by way of partition and quieting title was not res judicata as to issues herein.

16. WILLS—LIFE ESTATES—GRANDCHILDREN'S REMAINDER SUBJECT TO OPEN—VESTING.

Testator who devised a life estate in all his real and personal property to his wife for life, a joint life estate in his 5 children, and upon the death of his children to his "grandchildren in equal shares," vested a remainder subject to open in the grandchildren, but upon termination of the life estates the grandchildren had a per capita interest rather than a per stirpes interest in the premises.

17. APPEAL AND ERROR—PARTITION—QUESTIONS REVIEWABLE—QUIETING TITLE.

Dismissal of cross bill seeking to include in partition proceedings property which had been acquired by cross plaintiff at a tax sale and to quiet title in her is affirmed without prejudice, where cause is remanded for further proceeding after a partial judgment in the partition phase of the proceeding.

18. SAME—PARTIAL JUDGMENT—COMPROMISE AND SETTLEMENT.

Partial judgment in suit wherein relief by way of accounting, partition, and quieting title was sought is affirmed as modified and cause remanded with parties earnestly reminded to work out a settlement of equities in property that have resulted from will of testator who died upwards of a half century ago and who expressed a wish that none of his children or grandchildren should "make trouble in court."

ON APPLICATION FOR REHEARING.

19. JOINT TENANCY—LIFE ESTATE—EFFECT OF QUITCLAIM DEED.

A quitclaim deed by 1 of 5 joint tenants in a life interest to her brother and sister joint tenants severed the joint life tenancy with respect to the grantor, and the grantees remained as joint tenants with respect to an undivided 4/5 of the devised life interest while becoming tenants in common for the term of the grantor's life for the undivided 1/5 which accrued to them by the deed.

20. PARTITION—JOINT LIFE ESTATE—POSSESSORY INTEREST.

Present suit involving partition was not prematurely brought by grandchildren of testator who had left a life estate to his wife, a joint life estate to his 5 children, and remainder to his grandchildren, by reason of the fact that 1 of the children was still living, where such child had conveyed her interest to the other joint life tenants, all 4 of whom were dead before suit was commenced, since the parties seeking partition had possessory estates through their parents, to an interest which

would be measured by and terminate upon the death of the joint life tenant grantor.

Appeal from Monroe; Weipert, Jr. (William J.), J. Submitted February 7, 1964. (Calendar No. 63, Docket No. 50,368.) Decided November 2, 1964. Rehearing denied February 2, 1965, see opinion, page 47.

Bill by John C. Rendle and Viola Rendle against Mildred Sliker Wiemeyer and other named, unknown, and unnamed defendants for accounting and for partition of lands devised to remaindermen. Cross bill by Sylvia Rendle Clark, Helen Rendle, Evelyn Rendle Hoopingarner, Clarence Rendle, and Lois Rendle, and cross bill by Helen Rendle to quiet title to that and certain other parcels of similarly devised property. Partial judgment for plaintiffs. Defendants and cross-plaintiffs appeal. Affirmed, as modified, and remanded for further proceedings.

*Ready & Braunlich*, for plaintiffs.

*Abraham Satovsky*, for defendants and cross-plaintiffs.

O'HARA, J. This case involves 38.80 acres of land, 25 parties litigant, and rights which arose in 1909 adjudicated to some extent under a partial judgment entered May 3, 1963.

The legal issues include an alleged violation of the statute[1] prohibiting the suspension of the absolute power of alienation beyond 2 lives in being; the legal efficacy of partition proceedings had in 1917; the limitation of issues by the pretrial summary; interests in realty as affected by descent per capita or per stirpes; the alleged creation of life estates in common with a so-called "joint" right of possession or life estates in joint tenancy; and a few miscellaneous procedural snarls arising from application for default judgments on bills and cross bills.

With reference to the refusal of the trial court to enter default judgments against nonappearing or nonanswering original defendants and nonappearing or nonanswering cross-defendants, we decline at this time to interfere therewith. The case presents the

---

[1] CL 1948, § 554.15 (Stat Ann § 26.15), in effect from 1847 to 1949; repealed by PA 1949, No 38 (effective September 23, 1949); and see *Lantis* v. *Cook*, 342 Mich 347.

type of situation wherein no default judgment could be taken solely on the pleadings as, for example, might and, not infrequently, is accomplished in an action to recover a simple debt. The trial court reasoned, and correctly so in our view, that the complexity of the issues required presentment of full proofs in order to do justice to the rights or liabilities of all parties, appearing or not. Additionally a paradoxical situation could well result otherwise *viz.*, assume plaintiffs or cross-plaintiffs obtain judgment by default against nonappearing or nonanswering defendants or cross-defendants and yet be unable to prevail as plaintiffs or cross-plaintiffs against defendants or cross-defendants who have appeared and actively participated in the litigation. The statement of the proposition is sufficient to indicate the compounding legal confusion to follow.

It all seems to have happened this way. John Rendle died testate in 1909. His will read, in part, as follows:

"II. I give, devise and bequeath all my property both real and personal property to Harriette Rendle, my wife for her support during her natural life time.

"III. Also she shall have the right to sell and dispose of all my personal property and any part of my real estate that she may deem best to pay debts on real estate.    *    *    *

"IIII. [IV] After Harriette Rendle my wife's death my property both real and personal shall belong to my children Catherine M. Rendle Sliker, Sidney J. Rendle, Mary A. Rendle Lawrence, Lenard H. Rendle and Leona M. Rendle in equal shares for their use and support, during their lifetime, and after their death, it shall become the property of my grandchildren in equal shares."

As though the late Mr. Rendle had not sufficiently complicated things, he added another paragraph IIIII (the same variation of Roman numerals as

above apparently) which contained this stern admonition to his heirs:

"If any of my children or grandchildren should contest or make trouble in this my last will in court he or she will have but $5.00 for his or her share."

As the poet noted "the best-laid schemes o' mice an' men gang aft agley."[2] Despite Mr. Rendle's well-intentioned plans to avoid litigation, the matter is before us after a stormy voyage through the probate and circuit courts, on the installment plan since 1917.

Upon the death of Harriett the testator's wife, in 1916, Mary Alma Lawrence, a daughter, instituted partition proceedings in Monroe county probate court. She recited ownership of the property involved by the 5 Rendle children. Either by an oversight, or for some other inexplicable reason, the partition petition omitted reference to the life estate, and the grandchildren in whom the title was to vest upon the death of John Rendle's children were not made parties.

To complicate matters additionally in the present adjudication, Leona, one of testator's daughters, in 1917, by quitclaim deed conveyed her interest to her brothers and sisters. She had children who survive to the present.

Partition was ordered, commissioners appointed, and their report made and confirmed May 5, 1917. It purported to divide the property among the 4 children with 29.10 acres each to Catherine and Mary Alma and 19.40 acres each to Sidney and Leonard. Again no reference is made to the life estates. With this situation existing in January, 1962, John C. Rendle, grandchild and a remainderman of the testator, and his wife commenced this action naming as defendants his 3 sisters, all his cousins, 7 second

---

[2] Burns, To a Mouse.—REPORTER.

cousins, children of a deceased cousin, their wives (if any), known or unknown.

Plaintiffs allege the property in interest to be the south 38.80 acres of the Bedford township property. These are 2 parcels of 19.40 acres each, "partitioned" in 1917 to his father, Sidney, and his uncle, Leonard.

Plaintiffs aver that they and certain of the defendants became entitled to these parcels on the death in 1955 (probably 1956) of his father, Sidney, he being the last survivor of the life estate class of children.

It is further alleged that his sister, Helen Rendle, has been in possession of the north 19.40 acres since Sidney's death and that his cousin, Clarence, son of Leonard Rendle, has possessed the south 19.40 acres.

Plaintiffs pray an accounting of rents and profits and a sale of the premises for division of proceeds among those entitled.

Defendants who appeared and answered are Sylvia, Helen, and Evelyn, sisters of plaintiff John C. Rendle, and Clarence, his cousin. By answer these defendants deny right of relief to plaintiffs.

Plaintiff husband's sisters claim ownership of the 19.40 acres partitioned to Sidney, their father, by virtue of Sidney's will leaving the premises to his wife and the latter by her will leaving it to the 3 sisters. They plead the statute of limitations (5 years),[3] estoppel, invalidity of the ancestor's will as to creation of a remainder in grandchildren as violative of the rule relative to suspending the power of alienation.

Cousin Clarence, as to the south 19.40 acres defends on much the same grounds, also alleging that when his father, Leonard, died, his sole heirs were the widow and himself and that the former conveyed her interest to son.

---

[3] See CL 1948, § 609.1 (Stat Ann § 27.593).—REPORTER.

All these answering defendants file cross bills asking that title to these respective parcels be quieted as their interests appear, against anyone else.

The cross bills of Sylvia, Helen, and Evelyn also attempt to bring into the picture the north 58.20 acres of the 97 acres in question, contending that if any partition be granted, the whole parcel should be included. Plaintiffs defaulted nonappearing or nonanswering defendants. Cross-plaintiffs defaulted nonappearing or nonanswering cross-defendants.

If by this point anyone not a party hereto is still reading this opinion, reference is made to a supplemental page hereof which sets out the genealogy in the manner utilized by Mazo de la Roche in the Whiteoak novels, or Tolstoi in War and Peace. It should be further mentioned that if all the bills and cross bills were to be considered the whole west 97 acres of the quarter section would be to some degree involved. However, plaintiffs' complaint limits their interest to the south 38.80 acres and a salutary pretrial controlling statement reads:

"Counsel represent that because of the number and complexity of the issues they desire to shorten the trial and expedite same. * * * The issues raised and framed [by brief and answering brief] * * * shall be conclusive in the sense that neither counsel can thereafter frame new or additional legal issues."

These issues were designated A through G, and the court with attention and clarity treated them seriatim. We will follow his form with some reference to claimed error from appellants' brief:

"A. Was a vested remainder created in the grandchildren of testator John Rendle by his 1909 will?"

We answer that whatever complexities may have been created by the testator's will, one thing is clear

—it was his intent to vest title in fee to the residue of his estate, real and personal, in his grandchildren, either per capita or per stirpes:

"After Harriette Rendle my wife's death my property both real and personal shall belong to my children  *  *  *  [naming them] in equal shares for their use and support, during their lifetime, *and after their death, it shall become the property of my grandchildren in equal shares.*" (Emphasis supplied.)

As the trial court observed, the phraseology is neither "recondite, involved or ambiguous." It created a life estate in the ancestor's wife, a life estate in the remainder thereof in his children, and the vested title to the realty (realistically no personalty is involved) in his grandchildren. See *Quarton* v. *Barton,* 249 Mich 474, 475, 477 (69 ALR 820), where the key words in an ambiguous instrument were held to be "for her lifetime" despite a somewhat contradictory provision "to do with as she sees fit."

The intent of the testator, at least as to the grandchildren whether by representation or not, being clear, the next question is: Is the instrument void by reason of the suspension of the power of alienation? We answer as did the trial court. It was not, on the authority of *Felt* v. *Methodist Educational Advance,* 247 Mich 168. This Court there removed any question arising from inharmonious earlier decisions:

"The decisions of this court upon the question are not harmonious. It would be fruitless to discuss them or the opinions of other courts. Our later cases hold that the devise of a life estate to a class collectively creates an estate for one life only, that of the 'longest liver' of the class, and is to be so taken in determining the period of suspension of power of alienation." (*Felt, supra,* p 171.)

The classes were first the wife to whom the power of alienation was denied; the second class was the children, similarly restrained. These were the 2

lives, and title vested in the grandchildren. The statute here applicable[4] was not violated.

Since the testator's intent was clear and his testamentary instrument was valid, we will not discuss at any length the "partition" proceedings of 1917. It hardly needs supporting citation to conclude that the proceedings could not partition what the parties thereto did not have. They were void as to the remaindermen and vested no title in the second class of life tenants. For the same basic reason Leona, who quitclaimed to her brothers and sisters, could not thereby defeat the remainder interest of her children.

We come next to the issue of whether, irrespective of the order entered in the 1917 partition proceeding, the will of the ancestor created life estates in joint tenancy or in common among his children. It is argued that if the estates were in common, upon the death of each child, his or her children (grandchildren of the testator) had an immediate right of entry as to the 1/5 share of the parent. Contrariwise, if the life estates were in joint tenancy as each child of the testator died, his or her share devolved to the surviving life tenants and only upon the death of the last life tenant of the class did the right of entry to any remainderman accrue.

The trial court in effect held that while the children of the testator were tenants in common as to one another, the estate which the will created was "joint" in nature to the extent that all his children were entitled to a "joint" right of possession thereto during the lifetime of them all. It must be remembered that we deal now with a situation that could not reasonably be anticipated 54 years ago. The 38.80 acres here involved confuses the issue, but if this parcel is regarded as the whole "120 acres more

---

4 CL 1948, § 554.15 (Stat Ann § 26.15). (Since repealed.)

·or less" which the order assigning residue entered in the probate of the ancestor's will dealt with in their entirety by these words:

"120 acres more or less, * * * be and hereby is assigned to Harriett Rendle for the term of her natural life, and after her death to * * * [the testator's children naming them] for use and support during their lifetime in equal shares of 1/5 ·each, and after their death *to their respective children, according to the will,"*

the problem is a little more easily understood. Grandfather Rendle apparently envisioned a sort of baronial estate of 120 acres which was not, as long as possible, to be cut up.

Mr. Rendle's will provided, and we quote again:

"II. I give, devise and bequeath all my property both real and personal property to Harriette Rendle, my wife for her support during her natural life time. * * *

. "IIII. After Harriette Rendle my wife's death my property both real and personal shall belong to my children Catherine M. Rendle Sliker, Sidney J. Rendle, Mary A. Rendle Lawrence, Lenard H. Rendle and Leona M. Rendle in equal shares for their use and support, during their lifetime, and after their death, it shall become the property of my grandchildren in equal shares."

Thus, upon testator's death his grandchildren were devised vested remainders in fee simple subject to open. A remainder undoubtedly is vested when it is given to ascertained persons, or, as in this case, to a class (grandchildren) one or more of whom is in existence and ascertained, and when it is not subject to any condition precedent to enjoyment other than termination of an intermediate or precedent estate (here the precedent life estates in testator's wife and children).[5] A remainder vested sub-

5 CL 1948, § 554.13 (Stat Ann 1957 Rev § 26.13), purports to

ject to open vests initially in ascertained members of a class as representatives, in a sense, of the entire class, and thus those subsequently entering the class may also be said to have, upon entrance to the class, a vested remainder.[6] See 1 Simes and Smith, Future Interests (2d ed, 1956), § 146. The possibility that a grandchild remainderman living at testator's death or born thereafter might die prior to the termination of the precedent life estates does not prevent the remainderman from taking a vested estate. See *Holmes* v. *Holmes,* 215 Mich 112, 117. Nor does the fact that the remainder is subject to open mean it is subject to a condition precedent other than termination of the precedent estates, since it "includes a certainty of becoming a present interest [of the remainderman, his heirs or devisees] as to some share in the affected thing  *  *  *  and of continuing to

distinguish between vested and contingent future estates: "Future estates are either vested or contingent: They are vested when there is a person in being who would have an immediate right to the possession of the lands, upon the ceasing of the intermediate or precedent estate. They are contingent whilst the person to whom, or the event upon which they are limited to take effect remains uncertain."

The distinction is not one of general utility, for grants, devises and bequests can be hypothesized which may be characterized as vested or contingent depending upon which sentence of section 554.13 one applies to them. The inevitable progeny of such ambiguity are cases reaching dissimilar results on similar facts. Consider, for example, "To W for life, then to N if she is living; if not, to J." If attention is focused on the second sentence of the statute, the remainder might be characterized as contingent since the person to whom the remainder will go remains uncertain as long as W and N live. See *Lambertson* v. *Case,* 245 Mich 208. But, by focusing attention on the first sentence the remainder may be said to be vested (although subject to defeasance) because either N or J will have an immediate right to possession upon termination of W's estate. See *McInerny* v. *Haase,* 163 Mich 364.

Realistically, in the light of this statute no succinct general rule may be posited as a basis for classifying all remainders. Perhaps the most useful exposition of a feasible approach to the problem appears in 1 Simes and Smith, Future Interests (2d ed, 1956), § 165.

[6] The fact that after-born grandchildren of testator received a vested remainder is significant because one of them, Newman Sliker, died before termination of the joint life estate in testator's children, leaving seven children. Since Newman's remainder was vested, it was subject to devise or descent to those children.

be a present interest as to such share thereafter, while a remainder subject to a condition precedent includes neither of these certainties." 2 Restatement (1936), Property, § 157, comment *m*.

The intent of the testator, which it is always our goal to effectuate within pertinent precedential and statutory limits, *Johnson* v. *Atchinson,* 362 Mich 296, 299–301, was clearly stated by him to be that all of his grandchildren were to share equally in the remainder estate. By apodictic language he provided that after termination of the joint life estate in his children,[7] his property was to go to his grandchildren "in equal shares." A per stirpes distribution would not accomplish this.

Moreover, there is nothing in the will or the record before us to indicate that testator intended to favor one set of grandchildren over another set, as would

[7] CL 1948, § 554.44 (Stat Ann 1957 Rev § 26.44), provides:

"All grants and devises of lands, made to two or more persons, except as provided in the following section, shall be construed to create estates in common, and not in joint tenancy, unless expressly declared to be in joint tenancy."

Admittedly Mr. Rendle's will does not expressly declare that his children are to take as joint tenants, if by "expressly" one means use of the words "joint tenancy". However, the only way to give rational effect to all of the terms of the will is to construe the children's interests as being joint. The will speaks of the realty as being granted to the children for *"their* use and support, during *their* lifetime, and after *their* death, it shall become the property of my grandchildren in equal shares." The repeated use of the collective pronoun "their" is indicative of the testator's intent that the realty be distributed to the grandchildren only upon the death of all of his children. However, if the children took as tenants in common, upon each child's death his children would immediately be entitled to take their remainder interest, but only in their ancestor's share of the total estate. Thus, to hold that the children were tenants in common would mean that the testator's express command, that the realty eventually was to be distributed to his grandchildren "in equal shares," would be vitiated.

· Bearing in mind our oft-expressed desire to effectuate the intent of the testator, as expressed in his will, whenever possible, *Johnson* v. *Atchinson, supra,* we hold that even though the words "joint tenancy" were not employed expressly, nonetheless the testamentary intent of the testator is here clearly enough apparent so as to overcome the statutory preference for tenancies in common. See *Kemp* v. *Sutton,* 233 Mich 249, 258, and *Block* v. *Schmidt,* 296 Mich 610, 617; but *cf. Smith* v. *Caswell,* 278 Mich 209.

be the case if distribution were per stirpes.[8]  Absent indication to the contrary, a devise to a class whose members are related to the testator in equal degrees is presumed to be per capita rather than per stirpes. *Van Gallow* v. *Brandt,* 168 Mich 642, 649.

Another issue we believe should be adjudicated finally before the necessary remand for disposition of the questions deferred by the trial judge is whether the life tenants held adversely to the remaindermen and thus acquired title by adverse possession.  In this respect we are not unmindful that inequities may result.  We may not, however, do violence to the established general rule that a life tenant's possession is not adverse to a remainderman.  As we said in *Hamilton* v. *Wickson,* 131 Mich 71, at p 76:

"There was no adverse possession.  The relation of the parties preclude it."

So that no mistake may be made we set out from the partial judgment that which we now affirm:

"1. That a valid remainder interest was created in the grandchildren of John Rendle.

"2. That the will of John Rendle was not void by reason of the suspension of the power of alienation.

"3. That the partition proceedings of the Monroe county probate court of January 12, 1917, did not terminate the vested remaindermen's interest in the real estate vested in them according to will and the order of the probate court assigning the residue.

"4. That the grandchildren are not barred by the statute of limitations, their rights of entry having accrued in November, 1956, after which they had 15 years within which to act.

---

[8] Under a per stirpes distribution the five children of Alma Lawrence presumably would each receive 1/25 of the property in dispute, while the only child of Leonard Rendle would receive 1/5 of that property.  Prima facie this is an unlikely intent to ascribe to a testator.

"5. That Monroe county chancery case No. 4695 is not *res judicata* as to the issues in this partition petition and cross bill to quiet title."[9]

6. That each grandchild, *per capita, rather than per stirpes,* has a vested remainder interest in the premises, which are the subject matter of this partition suit.[10]

"7. That the cross bill of complaint seeking to include in these partition proceedings a parcel purchased at a State scavenger tax sale by the plaintiffs, and the plaintiffs' amended prayer to include a parcel purchased by Helen Rendle at a State scavenger tax sale be dismissed *without prejudice."* (Emphasis supplied.)

Any questions raised by appellants not specifically included in the foregoing items numbered and herein set forth, or not answered by necessary implication therefrom are to be adjudicated on remanded hearing.

We note with interest that the opinion of the court in the rendition of partial judgment contains this statement:

"After counsel have considered the court's ruling *and conferred on possible settlement"* (emphasis supplied),

and that counsel for plaintiffs reported to the court in the transcript of motion for partial judgment:

"I submitted a proposed partial judgment to counsel and he was unable to approve it for entry."

It would appear from the foregoing that since the parties cannot even agree upon a form of a partial judgment, little hope abides for a settlement of all the varied claims.   Quite candidly we remind the

---

[9] A somewhat related but entirely collateral action not controlling of the instant issues.

[10] This item has been modified.

parties litigant and their counsel that neither the trial court nor ourselves can turn back the clock. The subject matter of this lawsuit is in essence the will of John Rendle who died 55 years ago. The inexorable march of time has brought changes in status between his heirs in their relationship to the property he acquired, and in their relationship to one another that no court can realistically restore to *status quo*. No complete and absolute equities can be determined. Some may suffer, some may profit. It was their grandfather's express wish, as we noted earlier, that none of his children or grandchildren should "make trouble in court." We commend to all the parties this wish of the testator, earnestly hoping that the tangled equities that have become ensnarled over the years can be worked out in fairness and finality.

The partial judgment entered is affirmed, as modified. The case is remanded for further proceedings. Appellees may tax costs.

KAVANAGH, C. J., and DETHMERS, KELLY, BLACK, SOURIS, SMITH, and ADAMS, JJ., concurred.

### GENEALOGY

(1) John C. Rendle, died testate, 1909.
(2) Harriett Rendle, surviving widow of John, died 1916.
(3) Catherine Sliker. Died 1936.
(4) Sidney Rendle. Died 1956.
(5) Mary Alma Lawrence. Died 1950.
(6) Leonard Rendle. Died 1951.
(7) Leona Schlessman. Death not indicated, but she conveyed any interest of hers in the property later mentioned by deed, 1917.
(3), (4), (5), (6), and (7) are children of (1) and (2).
(8) Mildred Wiemeyer ⎫
(9) Hilda Kinney      ⎬ Children of (3).
(10) Newman Sliker    ⎭
(8) and (9) were living when this suit was commenced. (10) died in 1954 leaving 7 children.
(11) Sylvia Clark ⎫
(12) Helen Rendle  ⎬ Children of (4)—all living.
(13) Evelyn Rendle ⎪
(14) John C. Rendle ⎭
(14) and his wife are plaintiffs in this action.

(15) Velma Hasen  ⎤
(16) Melvin Lawrence ⎥
(17) Wayne Lawrence ⎬ Children of (5)—all living.
(18) Verna Luttrell ⎥
(19) Orlyss Venia  ⎦
(20) Clarence Rendle—Child of (6).
(21) Harriett Schlessman ⎤
(22) Wilma Schlessman ⎬ Children of (7)—all living.
(23) William Schlessman ⎦

(Variations in the spelling of the names here and as quoted in the will can be noted.—REPORTER.)

### ON APPLICATION FOR REHEARING.

O'HARA, J. After decision in this case appellants filed an application for rehearing, alleging that since Leona Schlessman, one of the five joint life tenants under John Rendle's will, was not yet dead, appellees, remaindermen under that will, were barred from bringing suit, citing CLS 1961, § 600.3308 (Stat Ann 1962 Rev § 27A.3308).* This contention is without merit. The quitclaim deed given by Leona to her joint tenants (her brothers and sisters) in 1917 severed the joint life tenancy with respect to her. The other children of the testator remained in the relationship of joint life tenants with regard to an undivided 4/5 of the devised life interest, and became tenants in common for the term of Leona's life with regard to the undivided 1/5 which accrued to them by virtue of Leona's quitclaim deed. See *Midgley* v. *Walker*, 101 Mich 583, (45 Am St Rep 431), and authorities there cited. Since Leona had but a life estate, the undivided 1/5 interest which she conveyed could endure only for as long as she lived.

Leona's sisters later conveyed their interest in the undivided 1/5 interest to their brothers, Sidney and Leonard, fathers of appellants.

This, then, is the situation: With regard to the undivided 4/5 interest in the disputed lands, the grandchildren of John C. Rendle have a possessory estate, since the precedent joint life estate in the testator's children has terminated, by Leona's conveyance to her brothers and sisters and by the deaths of those brothers and sisters. As to the undivided 1/5 interest in the lands, the appellants, through their fathers, have succeeded to this interest, which will terminate upon Leona's death.

Therefore, appellees did not bring suit prematurely, since they have and then had "an estate in possession in the lands of which partition is sought." However, in adjudicating the partition proceedings, the court will take into account the value of the undivided 1/5 interest in the lands which interest's duration is measured by Leona's life.

Appellants' application for rehearing is denied.

KAVANAGH, C. J., and DETHMERS, KELLY, BLACK, SOURIS, SMITH, and ADAMS, JJ., concurred.

---

* "Any person who has an estate in possession in the lands of which partition is sought may maintain a claim for partition of those lands, but a person who has only an estate in reversion or remainder in the lands may not maintain a claim for their partition."