349 Mich. 38 (1957)
84 N.W.2d 457
In re HILL ESTATE.
ORDWAY
v.
PRICE.
Docket No. 56, Calendar No. 47,351.
Supreme Court of Michigan.
Decided July 31, 1957.
*39 Henry E. Naegely, for proponent.
Leitson & Dean (Max Dean, of counsel), for contestants.
CARR, J.
The question at issue in this case is whether an instrument sought to be probated as the last will and testament of Maude Hill, deceased, was executed in compliance with statutory requirements. The facts are not in dispute. On June 4, 1955, Mrs. Hill entered the Chesaning State Bank and went to a window at which the assistant cashier of the bank, George E. Larner, was working. She indicated to him that she had made her will and requested that he notarize it. At his suggestion she affixed her signature to the instrument which was at that time entirely in her handwriting, whereupon Mr. Larner signed the paper and put his notary stamp on it below his signature. He then returned the paper to Mrs. Hill, who remarked that it would be necessary to have 2 witnesses also.
After noting that other employees of the bank who were working in the main room of the establishment were busy, Mr. Larner stated that he could get 2 of the girls in the back room to witness the signature to the document. Apparently that was satisfactory, and thereupon Mr. Larner took the paper and proceeded to the room to which he had referred. The witnesses on the trial in circuit court did not fix definitely the distance between the window at which Mrs. *40 Hill was standing and the table at which the employees were seated in the room at the rear of the bank. A witness for proponent estimated such distance at from 40 to 50 feet. It clearly appears that a conversation carried on in ordinary tones at the window could not be heard by those in the back room, and the converse is equally true.
It does not appear that there was any conversation between Mrs. Hill and Mr. Larner as to the particular individuals who should be asked to sign as witnesses. It is a fair conclusion that Mrs. Hill was satisfied to allow Mr. Larner, whom she had known for a number of years, to look after the matter for her, and that neither realized that witnesses should affix their signatures in the presence of the signer of the proposed will. It is not questioned that Mrs. Hill might have accompanied the assistant cashier on his errand to procure witnesses, but she did not do so. There is testimony also indicating that she might have left her position at the window and have proceeded to a point where she could look into the back room, but such change of position was not suggested to or by her. A witness for proponent, apparently a customer of the bank, was waiting near the window where Mrs. Hill was standing, and testified positively that the latter remained at the window until the return of Mr. Larner.
The assistant cashier wrote the word "Witnesses" in the lower left hand corner of the paper given to him by Mrs. Hill and procured 2 employees of the bank, Kathleen Spodney and Carrie Paul, to affix their signatures beneath the designation. Each testified on the trial that she knew the signature of Mrs. Hill, and acted in accordance with Mr. Larner's request. Neither witness saw Mrs. Hill. The situation is indicated by the following excerpt from the testimony of Mrs. Spodney:
*41 "Q. Now, from where you were sitting signing this paper, Mrs. Spodney, could you see any of the people in the public room of the bank?
"A. No, sir, I couldn't.
"Q. Could any of the people in the public room of the bank see you?
"A. Not where I was sitting.
"Q. Could you distinguish any of the conversation of people in the public room of the bank?
"A. Not if they were talking in a normal, low tone.
"Q. Before George Larner brought that paper back to you, Mrs. Spodney, do you recall of having heard any conversation concerning that paper?
"A. No, sir.
"Q. You didn't hear anybody talking about it before he brought it back to you?
"A. No, sir.
"Q. Did Maude Hill see you sign this paper?
"A. No, she didn't. Not that I know of, she didn't."
The testimony of Mrs. Paul was in accord with that of Mrs. Spodney. It is apparent that neither witness had personal knowledge of the presence of Mrs. Hill in the bank, and that they acted as witnesses solely because of Mr. Larner's request.
After the signatures of the witnesses had been obtained Mr. Larner returned the paper to Mrs. Hill who took it with her from the bank. After her death, which occurred on September 13, 1955, a petition was filed in the probate court of Saginaw county by Myrtle Ordway, a sister of Mrs. Hill, asking that the instrument be admitted to probate. Said petition was contested by Flora B. Price, the mother of Mrs. Hill, and in Mrs. Price's behalf by the trustees of her estate. Following a hearing, admission to probate was denied, whereupon the proponent appealed to the circuit court. Following trial the circuit judge directed a verdict in favor of proponent, and *42 from the judgment entered on such verdict contestants have appealed to this Court.
The matter of Mrs. Hill's intent is not open to question. It was her purpose to execute a valid will. However, intent alone is not sufficient to give validity to such an instrument not executed in accordance with the statutory requirements. As has been repeatedly declared by this Court, the right to make testamentary disposition of property depends wholly on the statute. CL 1948, § 702.5 (Stat Ann 1943 Rev § 27.3178[75]) reads as follows:
"No will made within this State, except such nuncupative wills as are mentioned in the following section, shall be effectual to pass any estate, whether real or personal, nor to charge or in any way affect the same, unless it be in writing and signed by the testator or by some person in his presence, and by his express direction, and attested and subscribed in the presence of the testator by 2 or more competent witnesses; and if the witnesses are competent at the time of attesting the execution of the will, their subsequent incompetency, from whatever cause it may arise, shall not prevent the probate and allowance of the will, if it be otherwise satisfactorily proved."
Under the facts in the instant case may it be said that the witnesses attested and subscribed the intended will in the presence of the testator? As before stated, neither of the witnesses saw her nor did she see them. From her position at the window in the bank, where she remained while Mr. Larner went in search of witnesses, she could not have seen either Mrs. Spodney or Mrs. Paul at the time they subscribed their names. She did not request them to attest the instrument but, rather, left the entire matter to her friend, the assistant cashier of the bank. The witnesses did not accompany Mr. Larner back to the window, where Mrs. Hill stood, for the purpose of *43 acknowledging to her that they had signed the paper as requested.
The situation is analogous on the facts to that involved in In re Cytacki's Estate, 293 Mich 555. The record in that case discloses that Walter Cytacki, being desirous of making a will, discussed the matter at some length with his niece, who wrote the instrument at his request. After due consideration the paper was signed, and the niece was requested to go to the home of a neighbor and to procure him and his wife to sign as witnesses. The distance between the houses was approximately 9 feet. The niece complied with her uncle's request, and obtained the signatures as directed by him. Neither of the witnesses saw Mr. Cytacki, nor does it appear that he saw them. There was nothing to prevent his going in person to the home of his neighbor, but he did not do so. Following his death the instrument was offered for probate, such action being contested on the ground that it was not executed in accordance with the statute. As in the case at bar, there was no question of testamentary ability, or of fraud or undue influence. There was no claim that Mr. Cytacki did not intend to make a valid will. The sole issue there, as here, was whether the requirement of the statute that the witnesses attest and subscribe in the presence of the testator had been disregarded. Following trial in circuit court the will was sustained, but this Court reversed, agreeing with the contention of the contestant that the witnesses had not signed "in the presence of the testator" within the meaning of the expression as used in the statute.
In the case of In re Flynn's Estate, 142 Misc 7 (253 NYS 638), probate was denied to an alleged will that bore the signature of Richard Flynn and also the signatures of 2 witnesses. It appears that a bank employee had notarized the instrument but had no recollection thereof at the time of the hearing. Testimony *44 was offered to indicate the custom that was followed in such a situation, it appearing from the proofs that following notarization the employee in question, as a matter of general practice, procured the signatures of other employees as witnesses. It was not customary to bring the witnesses in contact with the person seeking to execute the will. It is a fair conclusion that the practice observed by the bank employees under such circumstances was comparable to that followed in the instant case. Here, however, we have the benefit of uncontradicted proofs as to what occurred, thus excluding the possibility of reliance on a presumption of regularity. It may be noted that in the Flynn Case no reference was made to any such presumption, quite possibly because of the claim that the usual procedure was observed with reference to the witnessing of the will of Mr. Flynn. The court concluded that the procedure claimed to have been followed did not constitute compliance with the statute.
Counsel for appellee has cited in his brief a number of prior decisions of this Court, among which is Cook v. Winchester, 81 Mich 581 (8 LRA 822). There the testatrix was ill in bed. Her proposed will was prepared by a scrivener who wrote the name of testatrix at her direction, she indicating her acceptance thereof by her mark. Testatrix asked 2 ladies who were present to witness the instrument. They complied, stepping into an adjoining room where there was a table. Testatrix was unable to move in bed, and could not see the table. However, the witnesses returned with the scrivener to the room where she was, after complying with the request to sign. The names of the witnesses were shown to her, and according to the testimony in the case she was assured by one of them in the presence of the other that they had signed. It is a fair conclusion from the facts *45 in the case that the testatrix was aware of what was going on and that her request was being observed.
In the case at bar Mrs. Hill did not request the witnesses to sign, nor does it appear that either she or Mr. Larner knew what employees of the bank would be asked to witness the execution of the instrument. Neither may it be said that she knew what was going on in the back room of the bank. She did not know whether the signatures sought by Mr. Larner were or were not being obtained. She merely saw the names of Mrs. Spodney and Mrs. Paul on the paper when it was returned to her. Neither of the witnesses advised her, as in the Cook Case, that they had signed in accordance with her request. As before noted, neither of the witnesses saw Mrs. Hill at any time, and she was not in position to see them.
In In re Lane's Estate, 265 Mich 539, the testator requested his attending physician and a nurse to sign his will as witnesses thereto. There being no table in the hospital room in which the testator was lying at the time, said witnesses went out into the corridor and signed as requested. Thereafter the instrument was shown to the testator, with the names of the witnesses thereon. In sustaining the will, the Court cited with approval Cook v. Winchester, supra. It will be noted that in both of these cases the witnesses who signed did so at the request of the person making the will, within the hearing thereof and so near as "not to be substantially away from him."
Counsel has cited, also, In re Dalton Estate, 346 Mich 613. There one of the witnesses to the will gave testimony on the trial of the case indicating that he did not sign in the presence of the testator. His testimony was impeached by showing that on prior occasions he had made statements at variance with such claim. In sustaining the will it was considered that in view of the impeachment the testimony of the witness referred to was not entitled to consideration, *46 that the situation stood exactly as though there were no testimony indicating where the witness was at the time he affixed his signature, and that, in consequence, a presumption arose that the will had been executed (p 626) "in accordance with the requirements of the statute and in the presence of the testator."
Other decisions cited by counsel for appellee do not require comment. They are clearly distinguishable from the instant case on the basis of the facts established by the proofs. The reasons underlying the decision in In re Cytacki's Estate, supra, are applicable here and require reversal of the judgment of the circuit court. The instrument in question cannot be sustained other than by reading out of the statute the requirement that a will to be valid must be "attested and subscribed in the presence of the testator by 2 or more competent witnesses." This we may not do.
The case is remanded to the circuit court of Saginaw county with directions to set aside the judgment sustaining the will, and to enter judgment in favor of contestants. Appellants may have costs.
DETHMERS, C.J., and SHARPE, SMITH, EDWARDS, VOELKER, KELLY, and BLACK, JJ., concurred.