### JOHNSON v. ATCHINSON.

1. WILLS—CONSTRUCTION—INTENT—AMBIGUITY.

   Technical rules of construction of wills to ascertain the testator's intent are not to be applied automatically in the absence of ambiguity.

2. SAME—AMBIGUITY—LIFE ESTATE—REMAINDER.

   Devise of life estate in land to testator's son and upon the son's death "to the nearest of kin to him' the said [son] surviving him" was not ambiguous and expressed an intent that the son's nearest of kin surviving the son were to take the remainder interest.

3. SAME—LIFE ESTATE—SUSPENSION OF ABSOLUTE POWER OF ALIENATION.

   A devise which suspended the absolute power of alienation of an estate for 1 life in being at the time of the creation of the remainder did not violate the statute limiting the suspension of the absolute power of alienation, since such statute permitted suspension during the continuance of 2 lives in being at the creation of the estate (CL 1948, §§ 554.14, 554.15).

Appeal from Wayne; Fitzgerald (Neal), J. Submitted October 11, 1960. (Docket No. 58, Calendar No. 48,409.) Decided January 9, 1961.

Bill by Lee Johnson against Naomi Atchinson and Orson S. Atchinson for the construction of a will and attendant relief. Decree for plaintiff. Defendants appeal. Reversed and remanded.

REFERENCES FOR POINTS IN HEADNOTES

[1] 57 Am Jur, Wills § 1124.
[2] 33 Am Jur, Life Estates, Remainders and Reversions § 140.
[3] 41 Am Jur, Perpetuities and Restraints on Alienation § 15.

*W. Ralph Jewell* and *G. Leroy Smith,* for plaintiff.

*Dunbar Davis* (*Ray L. Potter,* of counsel), for defendants.

SOURIS, J.   Oscar Huston died in 1904.   By will, duly admitted to probate, he devised land:

·"To my son Arthur O. Huston   *   *   *   to be held used and enjoyed by him the said Arthur O. Huston for his use benefit and profit for during and to the end of his natural life to be fully determined and ended upon his decease and upon the death of said Arthur O. Huston I give and devise the same to the nearest of kin to him the said Arthur O. Huston surviving him."

We are called upon in this appeal to construe the foregoing language.   Speaking in general terms, we are asked to determine whether the remainder after the life estate goes to the life tenant's nearest of kin determined as of the time of his death or as of the time of testator's death.   Put another way, as it is by plaintiff, we are asked to determine that the remainder "vested" upon testator's death.   What plaintiff really urges upon us is that the remainder vested absolutely at the testator's death.   On the other hand, defendants ask us to determine that the remainder did not vest until the life tenant's death.   They claim that the remainder was a gift to a class the members of which could not be determined until the death of the life tenant.

Specifically, the factual background of this dispute is that at the time of Oscar Huston's death, his son Arthur had one child, Ivah, who was then about 4 years old.   In 1911, defendant Naomi was born to Arthur and his wife.   Arthur's first born daugther Ivah died in 1925, leaving as her heirs her son, plaintiff Lee Johnson, and another son who has since died. Arthur died in 1954 leaving his daughter Naomi sur-

viving him. The contest is between Ivah's surviving son Lee Johnson who claims that an indefeasible remainder vested in his mother Ivah, as Arthur's nearest of kin at Oscar's death, and Naomi, Arthur's surviving daughter born after Oscar's death, who claims that the remainder vested upon Arthur's death solely in her as his surviving nearest of kin.

The chancellor, relying upon *Sturgis* v. *Sturgis*, 242 Mich 52, held that the remainder vested in Ivah upon the death of the testator subject to no conditions precedent or subsequent. To reach this conclusion, the testamentary words "to the nearest of kin to him the said Arthur O. Huston surviving him" were construed (as was done in *Sturgis* v. *Sturgis*) to mean " to Arthur's nearest of kin surviving the testator." Certainly this construction of testamentary language is not much more extreme* than that adopted by this Court in *Sturgis* v. *Sturgis*. Because of the reliance placed upon the opinion in that case by the chancellor and by plaintiff on appeal, we deem it appropriate to review it and the antecedent decisions of this Court upon which it is based.

Sturgis died in 1872, devising lands to a son for life "and to descend to his male children, if any shall survive him, if not, then to his female children." Mr. Justice McDONALD, writing for the Court, acknowledged there was much force in the contention that the testator intended that only the life tenant's sons living at the life tenant's death should share in the estate, but said that such was not the "construction" adopted in this State and held that the remainder "immediately vested" in the life tenant's sons living at the testator's death, citing and relying upon *Porter* v. *Porter*, 50 Mich 456 and *In re Patterson's Estate*, 227 Mich 486.

---

* See comment, 41 Mich L Rev 953, 956, and 22 MSBJ 117, 120.

In *Porter* v. *Porter, supra,* testator devised a life estate to his wife and the remainder "to be divided equally between my surviving children". *In re Patterson's Estate, supra,* involved a devise of a life estate to testator's wife and at her death "the remainder over unto the surviving children, the issue of myself and my said wife." In both cases, this Court found the meaning of the word "surviving" ambiguous. Did the testator mean to limit the devise only to those of his children who survived the life tenant or did he mean that all of his children who survived him should share in the bounty? In neither will did the Court find a sufficiently clear indication of the testator's intent to permit decision without reference to technical rules of construction, some of which have been so long followed in this State that it is said they have become established rules of property and should not be disregarded.* The important point here is that the language used by the testators reasonably could be interpreted in a variety of ways so that it was impossible to determine with any degree of certainty what the testators intended by the language they used. It is only in such circumstance this Court is entitled properly to go beyond the 4 corners of the testamentary instrument and to apply technical rules of construction for the purpose of determining the testator's intent.

Mr. Justice FELLOWS put it this way in *In re Blodgett's Estate,* 197 Mich 455, 461, 462:

"It is a cardinal canon, a predominating rule in the construction of wills, that the intent of the testator must govern, unless it contravenes fixed rules of law. If the intent of the testator is expressed in clear and unambiguous language, there is no occasion for the application of technical rules of construction. Such rules should be applied, and applied only, to aid in

---

* *E.g., In re Patterson's Estate,* 227 Mich 486, at 488, 489.

arriving at that intent. The intent of the testator was fittingly styled by Lord Coke 'the polar star to guide judges in their determination.' Chancellor Kent said:

" 'The intention of the testator is the first and great object of inquiry; and to this object technical rules are, to a certain extent, made subservient.' 4 Kent's Commentaries (14th ed), p 534.

"Chief Justice Marshall, in the case of *Smith* v. *Bell,* 6 Pet (31 US) 68, 75 (8 L ed 322), said:

" 'The first and great rule in the exposition of wills, to which all other rules must bend, is, that the intention of the testator expressed in his will shall prevail, provided it be consistent with the rules of law.'

"If the intent of the testator is obscure, the language ambiguous, resort must be had to the well-understood rules applicable to the construction of wills for the purpose of arriving at the ultimate object of the inquiry, *viz.,* the intention of the testator, the solution of the question: What was his *will?*
\* \* \*

"To restate what we have already said, rules of construction of wills are to be used to aid in determining the intent of the testator, but not to obscure it, and must yield where by clear and unambiguous language that intent appears and has been expressed beyond question and beyond cavil."

Ample ambiguity existed in the *Porter* and *Patterson* wills to justify this Court's reliance upon technical rules of construction in determining the testator's intent. But, what ambiguity existed in the Sturgis will? Sturgis devised a life estate to his son with remainder over to the son's male children "if any shall survive him." Is Sturgis' intent clear? It hardly can be clearer and so the Court's task should have ended. Clearly the remainder went only to the son's male children who survived their father. The words "if any shall survive him" have reasonable meaning in the context used only

when so interpreted. There was no proper occasion for the Court to go beyond the testamentary instrument to determine the testator's *will,* very much unlike the circumstances confronting the Court in *Porter* v. *Porter* and *In re Patterson's Estate, supra.* By holding that its prior decisions in those cases required it to construe the quoted words of survival contained in the *Sturgis* will to mean survival only of the testator rather than of the life tenant, this Court erred and we now overrule that holding. We intend no dissipation of the vitality of the opinions in the *Porter* and *Patterson Cases* but we do intend to remove any suggestion the *Sturgis Case* may have left that technical rules of construction are to be applied automatically even in the absence of ambiguity or that words of survival limiting a remainder automatically are construed to mean survival of the testator.

Turning now to Oscar Huston's will, what ambiguity do we find that would justify applying our familiar technical rules of construction as aids in determining Mr. Huston's *will?* A life estate was devised to son Arthur with remainder over "to the nearest of kin to him the said Arthur O. Huston surviving him." Is the intent clear? Did Mr. Huston mean to say "Arthur's nearest of kin surviving *me*"? By rigid and automatic application of the technical rules of construction applied in the *Porter* and *Patterson Cases,* and misapplied in the *Sturgis Case,* so his intent would have to be construed. But Oscar Huston did not so intend. He intended to limit the remainder to Arthur's nearest of kin who survived Arthur and this is what he said in precise language which needs the application of no rule of construction for understanding. Our task here ends. The chancellor erred in ruling that the remainder interest "immediately vested" upon Oscar Huston's death in Ivah, thus entitling her or her heirs (of whom plain-

tiff was one) to take to the exclusion of Arthur's daughter Naomi born after Oscar Huston's death. The testator's intent that only those of Arthur's nearest of kin who survived Arthur should take the remainder interest was clear and the chancellor should have so held without going beyond the testamentary language.

Having so ruled, it becomes unnecessary for us to consider the other questions raised on appeal except for the claim made by plaintiff that a ruling such as we have made in favor of Naomi would violate the statute limiting the suspension of the absolute power of alienation* in force at Oscar Huston's death. On this point it suffices to say only that the absolute power of alienation was suspended for no longer than Arthur Huston's lifetime. Arthur Huston was a life in being at Oscar Huston's death when the remainder estate was created. The statute did not void such future estates unless the absolute power of alienation was suspended "for a longer period than during the continuance of 2 lives in being at the creation of the estate."

The order of the circuit court is reversed and the case remanded for entry of an order in accordance with this opinion. Costs to defendants.

DETHMERS, C. J., and CARR, KELLY, SMITH, BLACK, EDWARDS, and KAVANAGH, JJ., concurred.

---

* CL 1897, §§ 8796, 8797 (How Stat [2d ed], §§ 5530, 5531; CL 1948, §§ 554.14, 554.15 [Stat Ann §§ 26.14, 26.15]); repealed by PA 1949, No 38 (CLS 1956, § 554.51 *et seq.* [ Stat Ann 1957 Rev § 26.49(1) *et seq.*]).