*In re* BLANCHARD ESTATE

BLANCHARD v BLANCHARD

1. WILLS—IMPLIED REVOCATION—DIVORCE.

A divorce and settlement of property rights between husband and wife comprise a change of circumstances which operates to revoke by implication of law a husband's will previously made (MCLA 702.9).

2. WILLS—IMPLIED REVOCATION—DIVORCE—REMARRIAGE—INTENT OF DECEASED.

A conclusive presumption of revocation of a will by divorce and settlement of property rights between husband and wife is not affected by subsequent remarriage to each other or the possible intent of the deceased to provide for his widow.

Appeal from Wayne, Harry J. Dingeman, Jr., J. Submitted Division 1 November 9, 1972, at Detroit. (Docket No. 13205.) Decided November 28, 1972. Leave to appeal granted, 389 Mich 773.

Virginia W. Blanchard petitioned for probate of the will of Fred B. Blanchard. Kenneth D. Blanchard, Jean M. Yost, and Shirley Komer contested the probate. Petition for probate denied. Plaintiff appealed to circuit court. Affirmed. Plaintiff appeals. Affirmed.

*Liberson, Fink, Feiler, Crystal, Burdick & Schwartz, P. C.,* for plaintiff.

*Eliot Charlip,* for defendants.

REFERENCE FOR POINTS IN HEADNOTES
[1, 2] 57 Am Jur, Wills §§ 535, 536.

Before: LESINSKI, C. J., and FITZGERALD and VAN
VALKENBURG,* JJ.

LESINSKI, C. J. Plaintiff attempted to probate the
will of Fred B. Blanchard. Defendants contested
the probate, claiming the will had been revoked by
implication. On October 13, 1971, the probate
court denied plaintiff's petition for probate of the
will. The circuit court affirmed. Plaintiff appeals
upon leave granted.

The facts are not in dispute. The decedent and
plaintiff were married in 1949. Decedent executed
the will in question in 1952. He and plaintiff
obtained a divorce and property settlement in
1960. They remarried in 1963, and lived together
until his death in 1970.

Defendants opposed probate of the will on the
theory that the divorce and property settlement
had impliedly revoked the will. Their theory is
based on the Michigan revocation statute and on a
series of Michigan Supreme Court cases. MCLA
702.9; MSA 27.3178(79) states in relevant part:

"No will nor any part thereof shall be revoked, unless
by burning, * * * excepting only that nothing con-
tained in this section shall prevent the revocation im-
plied by law from subsequent changes in the condition
or circumstances of the testator."

This statutory language was first applied to a
divorce and property settlement situation in *Lans-
ing v Haynes,* 95 Mich 16 (1893). There it was held
that a divorce and property settlement comprised
such a "change of circumstances" as to revoke the
prior will by implication of law. This rule solidified
into a conclusive presumption in *Wirth v Wirth,*

---

* Former circuit judge, sitting on the Court of Appeals by assign-
ment pursuant to Const 1963, art 6, § 23 as amended in 1968.

149 Mich 687, 688–689 (1907), where the Court said:

"This offer of testimony presents the question whether the change in the relations of the parties to the settlement of their property affairs raises a rebuttable presumption of revocation or whether such divorce and settlement operates ipso facto to revoke the will. We think the circuit judge correctly held that the divorce and settlement revoked the will, and that the revocation was made and completed when the decree was signed, and that no subsequent act of the testator not accompanied by the solemnities requisite for the making of a valid will could revive the instrument in question and make it a valid will."

The Supreme Court reaffirmed the conclusive nature of the presumption of revocation by divorce in *In re McGraw's Estate,* 233 Mich 440 (1926). The Court created this conclusive presumption on the grounds that it was reasonable to infer in most cases that the testator would have intended a revocation. In *Lansing,* 20–21, it said:

"By the decree of divorce in this case, the parties became as strangers to each other, and neither owed to the other any obligation or duty thereafter. There was, therefore, a complete change in these relations, within the language above quoted from Chancellor Kent. It is not, in my judgment, the natural presumption that, after the testator had settled with her, had conveyed to her a good share of his property, and they, by agreement, had terminated all their property, as well as their marital relations, the will executed nearly 10 years before should remain in force, and operate upon his death as a conveyance of the remainder of his property to her, to the exclusion of his heirs. If this were so, then it would follow that, if he had children living, or a dependent mother or other dependent relatives, or a second wife without issue, his duties and obligations towards them must be set aside, in favor of a most harsh and unjust rule. * * * To hold the will

unrevoked under these circumstances would be repugnant to that common sense and reason upon which law is based. I do not think the common law is so unbending as to lead to this result. \* \* \* The natural presumption arising from these changed relations is the reasonable one, and the one which in law implies a revocation. The question is not to be controlled by a possible presumption, but by the reasonable presumption. The possibility, therefore, that the deceased might have desired that the remainder of his property should go to his divorced wife, cannot be considered in determining the question of an implied revocation in this case. Such disposition of his property would be unusual, and contrary to common experience."

This rule, in the case at bar, gives rise to what might be a harsh result. Here the testator had resumed the obligations of marriage. A reasonable presumption is that he would intend to provide for his wife in his will. The record does not disclose what property arrangements were made between the decedent and his wife upon the remarriage of the parties. In the least, the validity of the reasoning in *Lansing* and the rule of *Wirth* are challenged by the added fact of remarriage in our case.

Were we not bound by the rule of *Wirth* as reaffirmed by the Supreme Court in *In re McGraw's Estate,* we would remand for an evidentiary hearing to determine the relationship of the decedent and his wife as to their property upon remarriage. We would allow such other evidence as would bear upon disclosing the intent of the decedent in relation to his will made prior to the divorce.

While the circumstances of this case may make it appear appropriate to carve out an exception to the court imposed rule upon the statute, this Court is powerless to do so.

Affirmed. Costs to defendants.

All concurred.