*In re* BLANCHARD ESTATE
BLANCHARD v BLANCHARD

OPINION OF THE COURT

1. WILLS—REVOCATION—PRESUMPTIONS.

The proper rule for determining whether a revocation of a will
should be implied by law is that a presumption as to the
testator's intention must be reasonable and must take in con-
sideration all of the circumstances; revocation should not auto-
matically occur by operation of law, but only when the condi-
tions or circumstances warrant such operation (MCLA 702.9).

2. WILLS—REVOCATION—DIVORCE—PROPERTY SETTLEMENT—PRESUMP-
TIONS.

Michigan Supreme Court cases containing statements to the
effect that a divorce coupled with a property settlement creates
a presumption of revocation of a will which cannot be rebutted
by the acts or declarations of the divorced parties are contrary
to a Court decision, which they are purportedly based upon,
which urges a "common sense" and "reasonable" interpretation
of the law; an irrebuttable presumption leaves no room for
reason to fall upon fact nor for common sense to bring the
application of the law into the world of reality.

3. WILLS—CONSTRUCTION—INTENT.

It is the Michigan Supreme Court's goal "to effectuate within
pertinent precedential and statutory limits" the intent of the
testator, in cases involving wills probated in Michigan.

4. WILLS—REVOCATION—DIVORCE—PROPERTY SETTLEMENT—STATUTES.

The statute which provides the method for a revocation of a will

REFERENCES FOR POINTS IN HEADNOTES

[1, 11] 57 Am Jur, Wills § 548 *et seq.*
Presumption and burden of proof as regards continuance or revoca-
tion of will produced for probate, 165 ALR 1189.
[2, 4–6, 10, 13–16] 57 Am Jur, Wills §§ 535, 536.
[3] 57 Am Jur, Wills § 1133 *et seq.*
[7] 57 Am Jur, Wills § 148.
[8] 57 Am Jur, Wills § 456.
[9] 57 Am Jur, Wills § 217.
[12] 29 Am Jur 2d, Evidence § 222.

makes no mention of divorce and property settlement as acts of revocation and the only reference is a "revocation implied by law from subsequent changes in the condition or circumstances of the testator"; each case must be analyzed within the perimeter of its particular facts (MCLA 702.9).

5. WILLS—REVOCATION—DIVORCE—PROPERTY SETTLEMENT—REMARRIAGE—PRESUMPTIONS—STATUTES—CONSTRUCTION.

The words "subsequent", "condition" and "circumstances" in the statute providing for the method for a revocation of a will, according to their generally accepted meaning, cannot be restricted to the facts of divorce and property settlement—and no more; therefore, in a case where between the making of a will by a husband designating his wife as the primary beneficiary and his death there was, in addition to a divorce and property settlement, a remarriage of the testator and beneficiary named in the will and seven years of marriage "on close terms" thereafter, it is not the natural and reasonable presumption from the chain of conditions and circumstances to imply revocation of the will because of the divorce between the parties; at the time of the testator's death, the beneficiary and the testator were not strangers to each other, each owed the other obligations and duties, the beneficiary named in the will, the testator's wife, was a natural object of his bounty, and at the time of death, testator's circumstances in these respects were the same as when he executed his will (MCLA 702.9).

6. WILLS—REVOCATION—DIVORCE—PROPERTY SETTLEMENT—PRESUMPTIONS.

Neither statute nor common law justify a rule that there is an irrebuttable presumption of revocation of a prior will arising upon divorce and property settlement; to the extent that Michigan Supreme Court cases give credence to such a claim, they should be overruled.

### DISSENTING OPINION

T. M. KAVANAGH, C. J., and SWAINSON, J.

7. WILLS—STATUTES.

*The right to make testamentary disposition of property via a will is wholly statutory.*

8. WILLS—REVOCATION—STATUTES.

*The Michigan revocation statute is but one section of the Probate Code dealing with matters of descent and distribution; another section gives to all persons of Michigan of full age and sound*

mind the right to dispose of their estate by will; however, another section sets forth definite conditions and procedures that must be followed by the testator before such wills become effective and once effective another section provides the only means whereby such wills may be revoked; thus in Michigan the right to revoke a will is wholly statutory (MCLA 702.1, 702.5, 702.9).

9. STATUTES—REENACTMENT—CONSTRUCTION—JUDICIAL INTERPRETA-
TION—LEGISLATURE—PRESUMPTIONS.

The Legislature is presumed to have known of the judicial interpretation of a statute and when such a statute is substantially reenacted, the Legislature adopts such construction, unless the contrary is clearly shown by the language of the act.

10. WILLS—REVOCATION—STATUTES—LEGISLATURE—SUPREME COURT—
DIVORCE—PROPERTY SETTLEMENT.

Michigan's Legislature, in reenacting the Michigan revocation statute which states in relevant part that "[n]o will nor any part thereof shall be revoked, unless by burning, * * * excepting only that nothing contained in this section shall prevent the revocation implied by law from subsequent changes in the condition or circumstances of the testator", had every right to trust that the Michigan Supreme Court would interpret "subsequent changes in the condition or circumstances of the testator" as including divorce and property settlement of the testator, and that revocation would occur by operation of law upon the happening of such an event; since the task of the Michigan Supreme Court in interpreting that section is one of ascertaining legislative purpose, it holds that such is the result and readopts its prior opinions in Lansing v Haynes, 95 Mich 16 (1893), Wirth v Wirth, 149 Mich 687 (1907), and In re McGraw's Estate, 233 Mich 440 (1926) (MCLA 702.9).

11. WILLS—REVOCATION—PRESUMPTIONS—INTENT—STATUTES—SU-
PREME COURT.

Michigan revocation statute which provides in part that "[n]o will nor any part thereof shall be revoked, unless by burning, * * * excepting only that nothing contained in this section shall prevent the revocation implied by law from subsequent changes in the condition or circumstances of the testator", does not address itself to the question of presumptions, rather it states that "revocation implied by law" will occur upon the happening of certain conditions or circumstances; the statute allows no room for the Michigan Supreme Court to inquire into the testator's intent at the time of the change in circumstances in

*his life; it is only for the Court to look at the actual conditions that have occurred or the actual circumstances that have come about and to determine whether or not this particular type of circumstance or set of facts falls within the underlying principle which the Legislature sought to effectuate by passing the statute (MCLA 702.9).*

12. APPEAL AND ERROR—SUPREME COURT—RULE OF LAW—PRESUMPTIONS.

*Michigan Supreme Court, in determining whether or not particular facts may fit within a certain rule of law, may indulge in various kinds of reasonable presumptions to ascertain the true intent and purpose of the rule of law; however, once these presumptions have been utilized by the Court in its reasoning process, they no longer play any part in or in any way effect the operation of the rule itself; while it is within the province of the Court to reexamine the rationale behind a certain rule of law, and by so doing reexamine its original presumptions, the very fact it does so does not mean that the rule itself is only "presumed" operative, or "conclusively presumed" operative.*

13. WILLS—REVOCATION—INTENT—DIVORCE—PROPERTY SETTLEMENT—REMARRIAGE—STATUTES—PRESUMPTIONS.

*Michigan Supreme Court only reexamines whether or not a divorce and property settlement falls within the definition of the phrase "subsequent changes in the condition or circumstances of the testator" as the Michigan revocation statute uses that phrase where a husband executed a will, his wife became divorced from him, a property settlement agreement was entered, she filed a satisfaction of the decree of divorce, later they were remarried and remained husband and wife until the husband's death; if the Court decides that it does, then the statute operates automatically by operation of the law to revoke the will and if it decides that it does not, then the will remains valid and in either case, the intention of the testator as to* the operation of the rule itself *is irrelevant; our law does not allow such intention to be taken into consideration when statutes of this nature are considered; either the statute operates on these* facts *or it does not; Michigan law permits presumed and* rebuttable fact *situations, it does not countenance rebuttable statutory rules of law (MCLA 702.9).*

14. WILLS—REVOCATION—DIVORCE—PROPERTY SETTLEMENT—ADEMPTION—STATUTES.

*The reason "subsequent changes in the condition or circumstances of the testator", as provided in the Michigan revocation*

*statute, should be deemed to include divorce plus property settlement is that a full property settlement between husband and wife is usually arrived at after a consideration of the value and extent of the husband's estate, the wife is given an award in an amount influenced to a large degree by the inchoate interest she has in her husband's property; such a settlement, so far as it affects the husband's will, bears to some degree the characteristics of an ademption and it is the underlying principle of justice which supports the rule as to ademption which no doubt gives strength and reason to the implied revocation in case of a divorce and property settlement between husband and wife (MCLA 702.9).*

15. WILLS—REVOCATION—HUSBAND AND WIFE—REMARRIAGE—STATUTES—DIVORCE—PROPERTY SETTLEMENT.

*The sole fact that the testator remarries the same woman will not suffice to render nugatory the provisions of Michigan's revocation statute which operated on the will and revoked it at the time of the divorce and property settlement; subsequent action by the testator not fulfilling the statutory requisites for making a will, are necessarily irrelevant (MCLA 702.9).*

16. WILLS—REVOCATION—DIVORCE—PROPERTY SETTLEMENT—REMARRIAGE—STATUTES.

*A once valid will was revoked by operation of law by virtue of the Michigan revocation statute by the divorce and property settlement of the testator and his wife; the will ceased to exist, it was not reenacted in accordance with Michigan statutory rules and no new will has come into existence by the subsequent remarriage of the testator to his prior wife (MCLA 702.5, 702.9).*

Appeal from Court of Appeals, Division 1, Lesinski, C. J., and Fitzgerald and Van Valkenburg, JJ., affirming Wayne, Harry J. Dingeman, Jr., J. Submitted January 11, 1974. (No. 7 January Term 1974, Docket No. 54,525.) Decided May 21, 1974. Rehearing denied June 25, 1974.

43 Mich App 752 reversed.

Petition by Virginia W. Blanchard for the probate of the will of Fred B. Blanchard. Kenneth D. Blanchard, Jean M. Yost and Shirley Komer ob-

jected to the petition. Petition for probate denied.
Plaintiff appealed to circuit court. Affirmed. Plaintiff appealed to the Court of Appeals. Affirmed.
Plaintiff appeals. Reversed and remanded to probate court.

*Liberson, Fink, Feiler, Crystal & Burdick, P. C.,*
for plaintiff.

*Eliot Charlip,* for defendants.

M. S. COLEMAN, J.

## FACTS

Virginia and Frederick Blanchard were married on November 15, 1949. In 1952, Fred executed a will designating Virginia as executrix and primary beneficiary.

The Blanchards were divorced in 1960. A property settlement was made. Virginia maintains that the couple remained "on close terms" and that she cared for Fred when he was injured in an airplane accident. They were remarried in 1963 and lived together until Fred's accidental death in 1970.

Virginia petitioned for admission to probate of the 1952 will. This was opposed by decedent's children who claimed that the will had been revoked by the divorce. They sought to have Fred's estate pass intestate.

The probate court denied Virginia's petition. The circuit court affirmed as did the Court of Appeals at 43 Mich App 752; 204 NW2d 730 (1972). In the latter decision, Chief Judge LESINSKI recognized that it "gives rise to what might be a harsh result". However, the Court of Appeals held that prior decisions of this Court permitted no other result.

## *ISSUE*

Should the will, executed during the marriage and unaltered at any time after execution, be revoked by implication of law when the parties divorced, remarried and subsequently lived together for seven years until the testator's death?

## *STATUTE*

This case involves that portion of MCLA 702.9; MSA 27.3178(79) emphasized below:

"No will nor any part thereof shall be revoked, unless by burning, tearing, canceling or obliterating the same, with the intention of revoking it, by the testator, or by some person in his presence and by his direction; or by some other will or codicil in writing, executed as prescribed in this chapter; or by some other writing, signed, attested and subscribed in the manner provided in this chapter for the execution of a will; *excepting only that nothing contained in this section shall prevent the revocation implied by law from subsequent changes in the condition or circumstances of the testator."*

## *DISCUSSION*

The statute above sets forth specific acts which may revoke a will. Further, a revocation may be "implied by law" if "subsequent changes in the condition or circumstances of the testator" warrant such action.[1] "Subsequent changes" do not mandate revocation. The statute provides that the listing of specific acts of revocation does not preclude a finding that "subsequent changes" might also necessitate the court's revocation of the will.

---

[1] Words should be given a common construction according to their generally accepted meaning. *Hawley v Snider,* 346 Mich 181; 77 NW2d 754 (1956).

The facts of this case demonstrate the validity of the 1952 will.

In *Lansing v Haynes,* 95 Mich 16; 54 NW 699; 35 Am St Rep 545 (1893), the testator and his wife executed mutual wills. There was a subsequent divorce accompanied by a property settlement. The Court noted that the "feeling between them, at least upon her part, became bitter". The wife stopped speaking to the husband three months before the divorce. She went out of her way to avoid contact with him.

The testator died without having revoked his will. The Court held that a revocation should be implied by law:

"By the decree of divorce in this case, the parties became as strangers to each other, and neither owed to the other any obligation or duty thereafter. There was, therefore, a complete change in these relations * * * . It is not * * * the natural presumption that, after the testator had settled with her, had conveyed to her a good share of his property, and they, by agreement, had terminated all their property, as well as their marital, relations, the will executed nearly 10 years before should remain in force, and operate upon his death as a conveyance of the remainder of his property to her, to the exclusion of his heirs."

The Court then said that the possibility of a different result would be "unusual, and contrary to common experience" and that the decision should be controlled by a "reasonable presumption" as to testator's intention.

*Lansing* established the proper rule for determining whether a revocation should be implied by law, to wit: such presumption must be reasonable and must take in consideration all of the circumstances. It follows that revocation should not automatically occur by operation of law, but only when

the conditions or circumstances warrant such oper-
ation.

After the *Lansing* decision, and purportedly
based upon that decision, came *Wirth v Wirth,* 149
Mich 687; 113 NW 306 (1907) and *In re McGraw's
Estate,* 228 Mich 1; 199 NW 686 (1924).[2] In these
latter cases there are statements to the effect that
a divorce coupled with a property settlement cre-
ates a presumption of revocation which cannot be
rebutted by the acts or declarations of the divorced
parties. These statements are, in fact, contrary to
the decision in *Lansing* which urges a "common
sense" and "reasonable" interpretation of the law.
An irrebuttable presumption leaves no room for
reason to fall upon fact nor for common sense to
bring the application of the law into the world of
reality.

In cases involving wills probated in Michigan, it
is said always to be the court's goal "to effectuate
within pertinent precedential and statutory lim-
its" the intent of the testator. *Rendle v Wiemeyer,*
374 Mich 30; 131 NW2d 45 (1964) citing *Johnson v
Atchinson,* 362 Mich 296; 106 NW2d 748 (1961).[3]
Justice SHARPE dissenting in the second *McGraw*
case said that the "presumption of revocation is
founded upon the inference that, had the testator
made a will after the divorce, his former wife
would not have been provided for as she was in

[2] Retried and appealed, 233 Mich 440; 207 NW 10; 42 ALR 1283
(1926).

[3] Also *see* cases cited in the decision of *In re Graham Estate,* 379
Mich 224; 150 NW2d 816 (1967) supporting this statement:

We speak of the problem as being one of determining the testator's
intent. That intent must govern.

Although these cases pertain to the construction of will, the same
philosophy is pertinent in determining whether certain changes in
circumstances and conditions should imply a revocation. The statute
should not be interpreted in a manner which frustrates the testator's
intent.

the will he had theretofore made". Such an inference may not be drawn from the instant facts.

It should be noted that under the statute there is no mention of divorce and property settlement as acts of revocation. The only reference is a "revocation implied by law from subsequent changes in the condition or circumstances of the testator".

Each case must be analyzed within the perimeter of its particular facts. The defendants claim that the divorce and property settlement revoked the testator's will. They would not consider as a succeeding condition or circumstance the subsequent remarriage and the maintaining of that relationship until the husband's death.

It is understandable that a man or woman having already written one will—and none subsequently—would see no necessity to republish it or write another if the natural object of his or her bounty were the same after remarriage.

In this case, between the making of the will and testator's death, there was, in addition to the divorce and property settlement, a remarriage of the testator and beneficiary named in the will and seven years of marriage thereafter. At the time of the testator's death, the beneficiary and the testator were not strangers to each other. Each owed the other obligations and duties. The beneficiary named in the will, the testator's wife, was a natural object of his bounty. At the time of death, testator's circumstances in these respects were the same as when he executed his will.

It is not the natural and reasonable presumption from the chain of conditions and circumstances in this case, including divorce, property settlement and remarriage, to imply revocation under the *Lansing* rule. The words "subsequent", "condition"

and "circumstances", according to their generally accepted meaning, cannot be restricted to the facts of divorce and property settlement—and no more.

Neither statute nor common law justify a rule that there is an irrebuttable presumption (a conflict of terms)[4] of revocation of a prior will arising upon divorce and property settlement. To the extent that *Wirth* and *McGraw* give credence to such a claim, they are overruled.

If, as in *Lansing,* we draw a reasonable presumption, taking into consideration all of the conditions and circumstances towards the end that the testator's intent be respected and followed, we must reverse the Court of Appeals. Such is our conclusion.

Reverse and remand to the probate court for proceedings consistent with this opinion.

T. G. Kavanagh, Williams, and Levin, JJ., concurred with M. S. Coleman, J.

T. M. Kavanagh, C. J. *(dissenting).* This case is before us on leave granted from a decision of the Court of Appeals, 43 Mich App 752; 204 NW2d 730 (1972) upholding the trial court ruling that the will of the deceased, Frederick B. Blanchard, had been revoked by operation of law.

---

[4] 9 Wigmore, Evidence (3d ed), § 2492, p 292:

"In strictness there cannot be such a thing as a 'conclusive presumption'. Wherever from one fact another is said to be conclusively presumed, in the sense that the opponent is absolutely precluded from showing by any evidence that the second fact does not exist, the rule is really providing that, where the first fact is shown to exist, the second fact's existence is wholly immaterial for the purpose of the proponent's case; and to provide this is to make a rule of substantive law, and not a rule apportioning the burden of persuading as to certain propositions or varying the duty of coming forward with evidence. * * *

"The term has no place in the principles of Evidence ( * * * ), and should be discarded."

The parties have adopted the statement of facts as set forth by the trial court. They are as follows:

"The decedent executed the will in 1952. The widow appellant became divorced from him on April 20, 1960 (Wayne County Circuit Court #593–666). A property settlement agreement was entered on April 20, 1960, and widow appellant filed a Satisfaction of Decree of divorce, acknowledging receipt of the benefits of the property settlement, on May 20, 1960. In 1963 the decedent and widow appellant were remarried and remained husband and wife until decedent's death in 1970.

"The Will was offered for admission to probate by appellant who was also named primary beneficiary and executrix in the document. Objections to its admission were made by the three children of the decedent, who are the responding appellees in this matter on review.

"The Probate Court denied appellant's petition to admit the Will to probate, it appearing to the court that the instrument was revoked by implication of law."

On appeal three issues are raised. They are:

1. Does the rule that a will is revoked by operation of law upon divorce and property settlement of the testator still prevail in this state?

2. If it does so prevail, does the rule apply when the testator later remarries the same wife-beneficiary and is still living with her at the time of his death?

3. If a will is impliedly revoked by divorce and property settlement is it revived by a remarriage to the same party?

As the Court of Appeals stated (43 Mich App 752, 753–754):

"Defendants opposed probate of the will on the theory that the divorce and property settlement had impliedly revoked the will. Their theory is based on the Michigan revocation statute and on a series of Michigan Supreme

Court cases. MCLA 702.9; MSA 27.3178(79) states in relevant part:

" 'No will nor any part thereof shall be revoked, unless by burning, * * * excepting only that nothing contained in this section shall prevent the revocation implied by law from subsequent changes in the condition or circumstances of the testator.'

"This statutory language was first applied to a divorce and property settlement situation in *Lansing v Haynes,* 95 Mich 16 [54 NW 699; 35 Am St Rep 545] (1893). There it was held that a divorce and property settlement comprised such a 'change of circumstances' as to revoke the prior will by implication of law. This rule solidified into a conclusive presumption in *Wirth v Wirth,* 149 Mich 687, 688–689 [113 NW 306] (1907), where the Court said:

" 'This offer of testimony presents the question whether the change in the relations of the parties to the settlement of their property affairs raises a rebuttable presumption of revocation or whether such divorce and settlement operates ipso facto to revoke the will. We think the circuit judge correctly held that the divorce and settlement revoked the will, and that the revocation was made and completed when the decree was signed, and that no subsequent act of the testator not accompanied by the solemnities requisite for the making of a valid will could revive the instrument in question and make it a valid will.'

"The Supreme Court reaffirmed the conclusive nature of the presumption of revocation by divorce in *In re McGraw's Estate,* 233 Mich 440 [207 NW 10; 42 ALR 1283] (1926). The Court created this conclusive presumption on the grounds that it was reasonable to infer in most cases that the testator would have intended a revocation."

We are asked by the parties to review our prior precedents in this matter in light of the special facts of the case, and in light of our changing social milieu.

As this Court has stated many times in the past, the right to make testamentary disposition of

property via a will is wholly statutory. *In re Hill Estate,* 349 Mich 38; 84 NW2d 457 (1957).

The Michigan revocation statute, cited by the Court of Appeals, *supra,* is but one section of our Probate Code dealing with matters of descent and distribution.[1] MCLA 702.1; MSA 27.3178(71) gives to all persons of this state, of full age and sound mind, the right to dispose of their estate by will. However, MCLA 702.5; MSA 27.3178(75) sets forth definite conditions and procedures that must be followed by the testator before such wills become effective. Once effective, MCLA 702.9; MSA 27.3178(79) provides the only means whereby such wills may be revoked. Thus in our state, the right to revoke a will is also wholly statutory. *In re Houghten's Estate,* 310 Mich 613; 17 NW2d 774 (1945).

Our revocation statute has been passed down verbatim from its original enactment in 1838.[2] This Court's initial decision in *Lansing v Haynes,* 95 Mich 16; 54 NW 699; 35 Am St Rep 545 (1893) was handed down in 1893. This Court reaffirmed that decision in *Wirth v Wirth,* 149 Mich 687; 113 NW 306 (1907) and clearly resolved any ambiguity or lack of clarity in the prior decisions in *In re McGraw's Estate,* 233 Mich 440; 207 NW 10; 42 ALR 1283 (1926). The latter decision also clearly sets forth the exact extent to which the opinion would apply and the effect that subsequent actions by the testator would have on this rule of law.

With this background, our Legislature reenacted the Michigan revocation statute verbatim.[3] The effect of such action by the Legislature was well

---

[1] The Michigan statutes dealing with wills, their formation and revocation are MCLA 702.1—MCLA 702.9; MSA 27.3178(71)—MSA 27.3178(79).

[2] 1838 RS, Part Second, Title III, ch 1, § 9.

[3] 1939 PA 288, ch II, § 9.

stated by the Court in *Jeruzal v Wayne County Drain Commissioner,* 350 Mich 527, 534; 87 NW2d 122 (1957):

"In passing this legislation, the legislature is presumed to have known of the judicial interpretation of this Court * * * and, also, to have known that when a statute, clause or provision thereof, has been construed by the court of last resort of this State and the same is substantially reenacted the legislature adopts such construction, unless the contrary is clearly shown by the language of the act. See *People v Powell,* 280 Mich 699 [274 NW 372] (111 ALR 721) [1937]; 25 RCL, Statutes, § 297, p 1075."

This Court recently applied this rule in *In re Martiny Lakes Project,* 381 Mich 180, 194–195; 160 NW2d 909 (1968). In that case we stated:

"Our sole task is that of ascertainment of the hitherto considered question of legislative purpose.

"Here we ascertain that purpose by applying a mature rule of statutory construction, the one which in so many words says that a word or phrase, when employed again and again in amendments, codification, or reenactments of related and longstanding statutes without cue or clue that such word or phrase be viewed differently than when such word or phrase was applied in earlier decisions of unanimously settled import, will be taken again by Court as theretofore construed and applied. See 50 Am Jur, Statutes, § 442, Legislative Adoption of Judicial Interpretation, pp 461, 462. As the legislature proceeds from time to time with the process of amending, codifying, or reenacting maturely purposed statutes, that body is entitled to depend trustfully upon the word of this Court whenever that word appears as precisely and unanimously as it did in the *Shepard Case [Shepard v Gates,* 50 Mich 495; 15 NW 878 (1883)]."

Our Legislature, in reenacting MCLA 702.9; MSA 27.3178(79) had every right to trust that this

Court would interpret "subsequent changes in the condition or circumstances of the testator" as including divorce and property settlement of the testator, and that revocation would occur by operation of law upon the happening of such an event. Since our task in this case is one of ascertaining legislative purpose, we hold that such is the result and readopt our prior opinions in *Lansing, Wirth,* and *McGraw, supra.*

The parties and the Court of Appeals frequently use the phrase "conclusive presumption of revocation" in relation to the rule expressed by this Court in *Lansing, Wirth,* and *McGraw, supra.* They ask now that this "conclusive presumption" be changed to a "rebuttable presumption", one that might more effectively reflect the testator's actual intent on a case by case basis.

However, the parties and the Court of Appeals misconceived the actual holding in the aforementioned cases and misconstrued the language of our statute. In *Wirth, supra,* on page 689 this Court said, referring to *Lansing, supra:*

"It was held in that case, upon full consideration, that such subsequent divorce and settlement of property rights did in law imply a revocation of the will. These facts were not treated as facts raising a presumption of revocation open to be rebutted by testimony, for had such been the determination it would have been our duty to remand the case for a new trial, which was not done, but final judgment was entered in this court, the fact of the marriage and separation being treated as a revocation as matter of law."

Our statute does not address itself to the question of presumptions. It does *not* say that upon the happening of certain facts or circumstances that a will is presumed to be revoked. If it did so speak, then the type of presumption meant by the statute

would clearly be in issue. Rather, our statute states that "revocation implied by law" *will occur* upon the happening of certain conditions or circumstances. The statute allows no room for this Court to inquire into the testator's intent at the time of the change in circumstances in his life. It is only for this Court to look at the actual conditions that have occurred or the actual circumstances that have come about and to determine whether or not this particular type of circumstance or set of facts falls within the underlying principle which the Legislature sought to effectuate by passing the statute.

In dealing with a Nebraska statute, reading identically to our Michigan statute, the Supreme Court of Nebraska stated *(In re Bartlett's Estate,* 108 Neb 691, 694; 190 NW 869, 870 [1922]):

"The statute, instead of attempting to preserve and provide for those specific revocations allowed at common law, we believe, sought to preserve and perpetuate the underlying principle only upon which those revocations were based. To our mind, the legislature, in using the phrase authorizing such revocations as are to be implied by law, enunciated a rule of justice and a principle that the court should recognize and apply, whenever the change in the conditions or relations of the testator should be sufficient to create different duties on his part, or sufficient to make other persons than those who existed at the time of the making of the will the natural and proper objects of his bounty, and to raise a clear presumption that the testator would have desired to make a revocation, had his attention been directed to it."

In *Lansing, supra,* this Court sought to define what types of changes in condition and circumstance would be sufficient to bring the will within the provisions of our statute, which statute would then revoke same by operation of law. To make

this determination, to ascertain the underlying
principle and rule of justice espoused by our Legis-
lature in passing this statute, this Court looked to
what might be reasonably presumed to have been
the intent of the testator at the time of his divorce
and settlement. Deciding that upon a divorce and
property settlement the testator may be presumed
to have intended that his will be revoked, this
Court in *Lansing, supra,* stated that the Court
would look to see what might be a reasonable
presumption of the testator's intent given those
circumstances. It would not look at what might
*possibly* be his intent, but what it might *reason-
ably* be. The Court then stated, *Lansing, supra,* p
21:

"To hold the will unrevoked under these circum-
stances would be repugnant to that common sense and
reason upon which law is based. I do not think the
common law is so unbending as to lead to this result.
'The reason of the law is the essence and soul of the
law.' "

Thus in determining whether or not particular
facts may fit within a certain rule of law, this
Court may indulge in various kinds of reasonable
presumptions to ascertain the true intent and
purpose of the rule of law. However, once these
presumptions have been utilized by the Court in
its reasoning process, they no longer play any part
in or in any way affect the operation of the rule
itself. While it is within the province of the Court
to reexamine the rationale behind a certain rule of
law, and by so doing reexamine its original pre-
sumptions, the very fact it does so does not mean
that the rule itself is only "presumed" operative,
or "conclusively presumed" operative. Under the
instant facts we only reexamine whether or not a
divorce and property settlement falls within the

definition of the phrase "subsequent changes in
the condition or circumstances of the testator", as
our statute uses that phrase. If we decide that it
does, then the statute operates automatically by
operation of law to revoke the will. If we decide it
does not, then the will remains valid. In either
case, the intention of the testator as to *the opera-
tion of the rule itself* is irrelevant. Our law does
not allow such intention to be taken into consider-
ation when statutes of this nature are considered.
Either the statute operates upon these *facts* or it
does not. While our law permits presumed and
*rebuttable fact* situations, it does not countenance
rebuttable statutory rules of law. In dealing with a
similar issue, this Court made this point very clear
in *Carpenter v Snow,* 117 Mich 489, 493; 76 NW
78 (1898). In adopting the language of Justice
Brewer, the Court stated:

" 'On the other hand, in *Goodtitle v Otway,* 2 H Bl
522 [1795], Chief Justice Eyre held that, "in cases of
revocation by operation of law, the law pronounces
upon the ground of a *presumptio juris et de jure* that
the party did intend to revoke, and that *presumption
juris* is so violent that it does not admit of circum-
stances to be set up in evidence to repel it." And in the
leading case of *Marston v Roe,* 8 Adol & E. 14 [1838], by
all the judges in the exchequer chamber, it was finally
decided that the revocation of the will took place in
consequence of a rule or principle of law, independently
altogether of any question of intention of the party
himself. Such being the final solution of the question in
the English courts, it cannot be that the purpose of the
statute in question was to open the door to any other
evidence of intention than those expressly named. On
this side of the waters the matter has generally been
regulated by statute * * * .' "

The three prior decisions of this Court set forth
this Court's reasoning as to why this rule of law is

in effect in this state. We reaffirm and adopt their
rationale. Further, the Court in *In re Bartlett's
Estate,* 108 Neb 691, 695; 190 NW 869, 870 (1922)
adequately set forth my feelings as to the reason
"subsequent changes in the condition or circum-
stances of the testator" should be deemed to in-
clude divorce plus property settlement. The Court
stated:

"A full property settlement between husband and
wife, either expressed in their agreement or embodied
in the divorce decree, is usually arrived at after a
consideration of the value and extent of the estate of
the husband. The wife upon separation is given an
award, its amount influenced to a large degree by the
inchoate interest that she has in her husband's prop-
erty. Such a settlement, so far as it affects the hus-
band's will, bears to some degree the characteristics of
an ademption, and it is the underlying principle of
justice which supports the rule as to ademption which
no doubt gives strength and reason to the implied
revocation in case of a divorce and property settlement
between husband and wife."

In the instant case the widow has already re-
ceived the benefits of a full property settlement.
Unless she has conveyed away this property, it
remains hers alone. She also is now entitled to her
statutory share of her husband's estate. We see no
injustice being done in following this Court's prior
precedent. The sole fact that the testator remar-
ries the same woman will not suffice to render
nugatory the provisions of our statute. Our statute
operated on the will and revoked it at the time of
the divorce and property settlement. Subsequent
action by the testator, not fulfilling the statutory
requisites for making a will, is necessarily irrele-
vant.

As to the remaining issue in this case, whether
or not the will was revived by the subsequent

remarriage of the testator to his prior wife, the law is clear. As stated before in this opinion, the right to make a will is entirely statutory. By virtue of MCLA 702.9; MSA 27.3178(79) this will was revoked by the divorce and property settlement of the parties. Unless the provisions of our Probate Code are followed no new will may come into existence. Any intention of the testator with respect to republication of the will absent the requisite statutory formalities is irrelevant. *In re Houghten's Estate,* 310 Mich 613; 17 NW2d 774 (1945). Like the provisions dealing with the revocation of a will, our Probate Code sets forth certain definite requirements which must be complied with for a will to be valid. By setting forth these requirements, and by providing for revocation by law only under certain circumstances, our Legislature sought to achieve a certain stability in the probate area of the law. A party should be able to know with certainty whether or not a will is valid, and whether or not it has been revoked. Whenever the answer to one of these questions depends upon the testator's intent at a given point in time, a highly debatable fact situation usually arises. The end result inevitably would be protracted litigation, with the entire costs of this litigation usually being borne by the estate. If this Court were to allow the validity of a will, or the revocation, without the statutory requirement, to be determined by a changing testator's intent, the certainty of our probate law would be lost. The protracted litigation which would follow would create such a drain on all estates, both large and small, as to be unconscionable.

Certainty is needed. The parties and their attorneys need some kind of definite concrete rules, easily determinable, to which the facts of the case might be applied, to determine whether a will is,

or is not, valid. A rule, based upon an ever changing testator's intent, is not such a rule. The standards set forth by the Legislature for the making of a will comprise such a rule and unless these standards are met, this Court holds that no will exists. In the instant case the once valid will was revoked by operation of law. It ceased to exist. It was not reenacted in accordance with our statutory rules. No new will has come into existence.

The result reached by the opinions below is affirmed.

SWAINSON, J., concurred with T. M. KAVANAGH, C. J.

J. W. FITZGERALD, J., did not sit in this case.