# JUNE TERM 1883.

---

| 50 | 495 |
|----|-----|
| 103 | 39. |

| 50 | 495 |
|----|-----|
| 128 | 286 |

| 50 | 495 |
|----|-----|
| s15ᴺᵂ | 878 |
| 129 | 34 |

## THOMAS SHEPARD, OVERSEER v. SAMUEL G. M. GATES

*Legality of highway—Bridging streams—Treble damages for injuries to highways and bridges.*

Where notice of proceedings to lay out a public highway sufficiently states the starting point and width, the use of the words "varying so far as is necessary to find suitable ground for making a good and substantial road" will not vitiate the legality of the highway so far as it actually follows the survey lines.

The constitutional requirement that leave must be obtained from the board of supervisors before any navigable stream can be bridged does not apply to streams which, in their natural condition, are not adapted to any valuable boat or vessel navigation.

Comp. L. §§ 1320–1 allowing treble damages for injuries to highways and bridges is not unconstitutional; but such damages are punitory and ought not to be imposed in cases not clearly defined or not involving something like wilful wrong. The statute applies only to active injuries proceeding directly from unlawful acts, and the single damages are limited to what would have been sufficient at the time of the injury to restore the road to its former condition.

Comp. L. §§ 1320–1 giving treble damages for injuries to highways does not apply to one who, as agent of a corporation, has made a cut in the road by statutory authority, but has not properly bridged it; this would be corporate neglect, but not a positive nuisance by the agent. Nor would the diversion of a stream from a channel where it already crossed the road be actionable, as against the agent, if authorized; and if the bridge over the old channel was remodeled by the agent in concert with the highway commissioner, his removal of the old bridge would not be a trespass, and any cause of action arising therefrom would be at common law and not under the statute.

The treble damages allowed by Comp. L. § 1320 for injuries to bridges are for injury to the structure and not to public travel; and in an action therefor evidence of the importance of the road to the people, and of its use is inadmissible.

495

Whether an overseer of highways can sue for injuries to a highway from
    acts done before the creation of the township in which he is over-
    seer, and where the only damage alleged, since such township was
    set off, resulted to it from the cost to the town of making changes
    in the highway that were rendered necessary by the acts charged—*Q.*

Error to Iosco.   (Tuttle, J.)   April 12.—June 6

CASE.   Defendant brings error.   Reversed.

*Holmes, Collins & Stoddard* for appellant.

CAMPBELL, J.   This action was brought to recover treble
damages under sections 1320 and 1321 of the Compiled
Laws of 1871, for injuries to a highway and bridge.   The
declaration set out in substance, as the grievance, that in
March, 1877, there was a section line highway including a
bridge over the east branch of the Au Grès River, and that
defendant removed and destroyed the bridge, made a cut
through the highway, and diverted the stream through the
cut.   The special damage alleged was that the authorities of
the township were compelled to rebuild the bridge, and also
to bridge over the cut or ditch.

The facts were that in March, 1877, the Au Grès River
East Branch Improvement Company were authorized to
improve the navigation at that point by cutting a new chan-
nel across a bend, and the ditch or cut referred to was this
new channel ; that the bridge across the old channel was
taken up in part to furnish materials for bridging the cut,
and so much of it as was deemed necessary was re-laid in
its old position in a different way, the channel having ceased
to be of any use for running logs or other floatage.   The
bridge over the cut was after a time replaced by the town
as not sufficient.   It was claimed, and there was testimony
tending to show, that defendant acted as agent of the Im-
provement Company, and that the commissioner of highways
approved the bridge that he left in place.

In the view we have taken of the case it is not necessary
to discuss at large the legal sufficiency of the highway in
question.   Being laid out as a section-line road with a suf-

ficient starting point and width declared, we do not think that the language "varying so far as is necessary to find suitable ground for making a good and substantial road" would vitiate so much of the road as actually followed the survey lines, and such seems to have been the road in question at the place described.

The objection that no authority had been given by the board of supervisors to build the bridge would have required attention if it did not appear that this branch of the Au Grès was only used for floating logs, and does not appear to have been adapted in its natural condition to any valuable boat or vessel navigation. The clause in the Constitution providing that "no navigable stream in this State shall be either bridged or dammed without authority from the board of supervisors of the proper county, under the provisions of law" has been understood as adopted in furtherance of the policy of the Ordinance of 1787, which stipulated that "the navigable waters leading into the Mississippi and St. Lawrence, and the carrying places between the same, shall be common highways, and forever free," etc. Ordinance of 1787, art. 4. That has been considered as referring to navigation in its proper sense by some sort of boats used as means of carriage. At the date of the Ordinance the largest portion of the carrying trade in the Northwest was conducted in moderate sized boats, and the cargoes, and sometimes the boats themselves, were taken across the portages or carrying places dividing one stream or stretch of navigable waters from another. The Legislature of 1851 so construed the Constitution, by confining the necessity of special leave from the supervisors for constructing bridges to streams navigable by boats or vessels of fifteen tons burden or more, while the supervisors were authorized to make general regulations in regard to shallower streams. Act 156 of 1851, §§ 23, 24. In the absence of anything appearing to the contrary, we do not think that a bridge which does not interfere with convenient floatage can be regarded as having been built illegally in completing this highway.

Neither are we prepared to hold that the statute giving

treble damages is unconstitutional. It had been in force several years before the Constitution of 1850 was adopted, and was never, so far as we can learn, challenged before or since. This is not the only instance in which more than single damages have been provided for in case of trespasses, and such laws have always been acted on without question.

But inasmuch as treble damages are in their nature punitory, it cannot be assumed they were designed to be inflicted in any case not clearly defined, or in any case not involving something like wilful wrong. The statute applies to nothing but active injuries proceeding directly from unlawful acts. They must be such acts as "injure the highway" by impairing its good condition. Acts which do not affect the condition of the road itself may be actionable at common law, but cannot come within the terms of this statute. And it follows, necessarily, that the damages allowed to be trebled can be no more than would have sufficed at the time of the injury to put the road in its former condition. It also follows that such damages cannot arise from mere neglect, but must come from active misconduct.

If the defendant—as the record seems to indicate was the fact—made the cut in the road for a new channel, under the proper statutory authority, the cutting itself was no trespass, and any failure to properly bridge over the, cut would be an act of corporate neglect for which the company might be responsible, but it could not be such a positive misfeasance as would make the company's individual agent a trespasser. And, on the same principle, the diversion of the stream, if authorized, would not be actionable at all. The removal of the old bridge—unless under some proper arrangement—might, if not adequately replaced, come within the statutory mischief.

But it is evident that after the diversion of the stream, there would not be the same necessity for the continuance of an ordinary bridge, and it seems to us clear that in making such changes as were made here, public policy would be advanced and not hindered by doing it in concert with the lawful highway authorities. If, therefore, in good faith

and honestly, the old bridge was remodeled to the satisfaction of the highway commissioner, such action could not be regarded as a trespass, and any cause of grievance must be treated as a common-law grievance, and not as a statutory wrong.    We think the court took an erroneous view of the effect of the action and consent of the highway officers.

We are also of opinion that it was improper to permit testimony concerning the importance of this road to the township, and of its use to the population.    The damage recoverable under the statute must be recoverable for injury to the structure, and not to public travel.

As the case must go back for a new trial, it would be improper to omit reference to a difficulty apparent on the face of the record.    There seems to have been no evidence concerning the creation or extent of the highway district. It appears that all the acts done on which the liability is predicated were done while the place in question was in the township of Alabaster, and that the only damage alleged since the town of Sherman was created was consequential from the cost to the town of building a new bridge over the cut and removing the bridge already there.    If any cause of action existed under the statute at all, it arose in the spring of 1877, and the damages accrued to the road district injured.    As our attention was not called to this difficulty, we express no opinion as to where any right of action exists if it exists at all at this time.    The theory of the trial below was so radically incorrect in other particulars that we confine our rulings to that.

The judgment must be reversed with costs and a new trial granted.

GRAVES, C. J. and COOLEY, J. concurred.