OVERSEER OF HIGHWAYS OF ROAD DISTRICT NO. 4 OF
ST. IGNACE TOWNSHIP *v.* PELTON.

1. INJURY TO BRIDGE—TREBLE DAMAGES—LIABILITY.
    2 Comp. Laws, § 4160, giving treble damages for injuries to bridges, does not apply to cases of mere negligence, but only to those involving something of willful misconduct.

2. SAME—MISCONDUCT OF CONTRACTOR.
    One who contracts for logs to be delivered to himself at the mouth of a stream cannot be held liable under 2 Comp. Laws, § 4160, for injuries to a bridge over the stream, due to the wrongful acts of the contractor.

Error to Mackinac; Shepherd, J. Submitted October 25, 1901. Decided December 3, 1901.

Case by the overseer of highways of road district No. 4 of St. Ignace township against David Pelton and William Reid for injury to a public bridge.  From a judgment for defendants on verdict directed by the court, plaintiff brings error.  Affirmed.

*James McNamara*, for appellant.

*Henry Hoffman*, for appellees.

LONG, J.  This action was brought under section 4160, 2 Comp. Laws, for the alleged willful destruction of a bridge over Pine river, in St. Ignace township.  The statute reads:

"Whoever shall injure any bridge maintained at the public charge, or any public road, by drawing logs or timber on the surface of any such road or bridge, or by any other act, shall be liable in damages to three times the amount of the injury, to be recovered in an action of trespass or on the case by the overseer of highways of the road district within which the injury was done, in his name of office, to be expended by him in the repair of roads in his district," etc.

It appears that the defendants are lumbermen, and operate a sawmill at Cheboygan.  Pine river has its head waters in Chippewa county, and flows southerly through the eastern portion of Mackinac county, and empties into Lake Huron.  The bridge in question crosses Pine river in St. Ignace township, some two or three miles from the mouth of the river.  During the winter of 1898 and 1899 one Robert Bolton cut about 1,000,000 feet of logs near the river, under a contract with defendants, by the terms of which Bolton was to cut and deliver them into a boom at the mouth of Pine river.  Other parties were also cutting and putting logs into the river above where Bolton was putting his in.  In the latter part of April, 1899, Bolton took a raft of pine logs that were cut under the contract with defendants down the river, under the bridge, and delivered them to defendants.  The defendants took no charge of this raft.  There were logs left along the

banks, some belonging to defendants, which had been cut by Bolton under the contract, and some belonging to other parties, and these logs became somewhat jammed above the bridge.   The attention of one R. M. Woods, foreman of defendants, was called to the condition of this jam by the overseer of highways, but nothing was done by him about removing the jam, though the overseer at that time made a passage through the pulp wood that formed part of the jam, and put some logs through under the bridge.   Some 30 days after this a heavy freshet occurred, raising the water in the stream to about the height of 12 feet.   The witnesses seem to agree that, by reason of this sudden freshet, the logs, some belonging to the defendants and some to other parties, were piled up and cast against the bridge, carrying away the center abutment, and destroying the bridge.

Counsel on the trial below asked the court to direct the verdict in favor of defendants for the reasons:

"1. Because, under the declaration and the testimony in this case, the plaintiff is not entitled to recover.   The testimony, if it has any tendency whatever, only tends to show a mere negligence on the part of the defendants, and the statute not being applicable to cases of that kind.

"2. Because there is a variance between the declaration and the proofs.

"3. Because, on the undisputed evidence in this case, it appears that the proximate cause of the injury was not the logs at Pine river, but the extraordinary and unusual flood and freshet that occurred at that time, bringing with it large quantities of pulp wood and driftwood, and forming a jam at the bridge.

"4. Because the undisputed evidence shows that whatever logs were driven on this river in the spring of 1899 were driven by one Bolton, who was a jobber, and had full control of the logs until they were delivered in booms at the mouth of Pine river."

The court directed the jury as follows:

"*Gentlemen of the Jury:* The court has decided to relieve you of all responsibility in this case, and direct a verdict of no cause of action.   For the purpose of getting

it upon the record, I will say that the reason is based upon the statute itself, which is, I may say, semi-criminal; that is, it is a punitory statute,—that is, it is one of these statutes that seeks to punish people for an injury to a highway. The court holds that it is intended thereby to punish active injury and interference with the highways, or injury which follows from such gross negligence as to amount to a culpable and wanton negligence. The court fails to find from the testimony in this case that there is any testimony tending to show that the defendants actually trespassed upon this bridge or injured it, or that they were guilty of such gross negligence as amounts to a culpable and wanton negligence; and for that reason you will, without leaving your seats, render a verdict of no cause of action."

We think the court was not in error in this ruling. It is apparent that, if any action could be maintained under this statute for the injury or demolition of the bridge, it could not be against the defendants. Their contract with Bolton was that he should drive these logs to the mouth of the river. The stream is a navigable highway for the purpose of floating logs, and the defendants could not be held personally liable for the willful negligence of Bolton in driving them. This statute was before this court in *Shepard* v. *Gates*, 50 Mich. 495 (15 N. W. 878). It was there said:

"Inasmuch as treble damages are in their nature punitory, it cannot be assumed they were designed to be inflicted in any case not clearly defined, or in any case not involving something like willful wrong. The statute applies to nothing but active injuries proceeding directly from unlawful acts. * * * It also follows that such damages cannot arise from mere neglect, but must come from active misconduct."

The mere fact that defendants' foreman, R. M. Woods, was notified of the jam of logs some 30 days or more before this freshet, and was asked to remove it, would not make the defendants liable. They had nothing whatever to do with running the logs, nor was the foreman employed in doing so. The contract was with Bolton. The

defendants are not shown to have been guilty of any willful misconduct in the premises.

The judgment must be affirmed.

The other Justices concurred.