CAVANAGH, J.
(dissenting). Michigan’s Constitution provides our citizens with the right to trial by jury. Const 1963, art 1, § 14. Because I believe the right to a jury trial is a fundamental right that encompasses the right to have our citizens awarded damages based on the jury’s determination and because I believe MCL 257.401(3),[1] the damages cap in this case, violates *450 plaintiffs right to a jury trial, as well as plaintiffs equal protection and substantive due process rights, I respectfully dissent.
I. THE CONSTITUTIONAL RIGHT TO A TRIAL BY JURY
“The right of trial by jury shall remain, but shall be waived in all civil cases unless demanded by one of the parties in the manner prescribed by law.” Const 1963, art 1, § 14. “The right to jury trial in civil litigation is of constitutional dimension.” Wood v Detroit Automobile Inter-Ins Exchange, 413 Mich 573, 581; 321 NW2d 653 (1982). The right to a jury trial is a fundamental right, “regarded as the great bulwark of the liberty of the citizen.” McRae v Grand Rapids, L & D R Co, 93 Mich 399, 401; 53 NW 561 (1892); see also People v Smith, 383 Mich 576, 578; 177 NW2d 164 (1970) (“Trial by jury is a basic constitutional right.”).
The right to a jury trial also encompasses the right to have the jury determine damages. Leary v Fisher, 248 Mich 574, 578; 227 NW 767 (1929). In Aho v Conda, 347 Mich 450, 455; 79 NW2d 917 (1956), this Court stated that “the question of damages is fundamentally a jury *451 question.” In Rouse v Gross, 357 Mich 475, 481; 98 NW2d 562 (1959), this Court stated, “The right of trial by jury ordinarily refers to a right to present or defend an actionable claim to 1 jury to the point of jury verdict and judgment.” See also Rich v Daily Creamery Co, 303 Mich 344, 349; 6 NW2d 539 (1942); Sweeney v Hartman, 296 Mich 343, 347; 296 NW 282 (1941).[2] It is perplexing, to say the least, that the majority argues that the damages cap does not implicate plaintiffs right to a jury trial. The majority argues that damages were “never within those things a jury can decide.” Ante at 429-430. But a jury does decide damages. Merely because the majority deems a damages determination to be part of the “great mass of procedural forms and details,” ante at 427, and not within the jury’s purview, does not change the fact that part of the jury’s historic role has *452 been to determine damages. Thus, the damages cap invades the jury’s role. Because of the $20,000 damages cap, when the amount of damages determined by the jury is over $20,000, the jury’s determination is of no consequence. The right to a jury trial is illusory in the most severe cases, those in which the amount of damages exceeds $20,000. Surely, this illusory “right” does not comport with our citizens’ constitutional right to trial by jury. The right to a jury trial is not satisfied by providing jurors the opportunity to announce an award and then have it arbitrarily ignored with no regard for the facts of the case. Our constitutional mandates certainly must be afforded more than mere lip service. While the Legislature can change, amend, or repeal a statute, it cannot abrogate a citizen’s constitutional right to trial by jury. Because the damages cap is applied automatically, without regard to the jury’s assessment of damages, the damages cap violates our citizens’ constitutional right to trial by jury.
Because the right to a jury trial is a fundamental right, the damages cap must withstand strict scrutiny to be deemed constitutional. Doe v Dep’t of Social Services, 439 Mich 650, 662; 487 NW2d 166 (1992). Under a strict scrutiny analysis, a statute will be upheld if it is precisely tailored to serve a compelling governmental interest. Id. In this case, the alleged “compelling” governmental interest that prompted the damages cap is the continued viability of the automobile rental industry. The Legislature’s response to the alleged crisis in the automobile rental industry was to restrict recovery for the most severely injured plaintiffs. No matter the merits of the claim, the Legislature restricted a victim’s damages, resulting in an arbitrary limit on the amount of damages a victim can recover. This means that the victims who are the most severely injured will have their damages reduced the most, while *453 less seriously injured victims can fully recover. Even if one were to agree that a crisis existed and that such a crisis may be considered a compelling governmental interest, the Legislature’s action was not precisely tailored. There were numerous other measures the Legislature could have taken, such as requiring automobile rental drivers to be insured, that would have addressed the alleged crisis while not making such a sweeping restriction to our citizens’ fundamental right.
Notably, the Legislature’s decision to limit the amount of recovery from the automobile rental industry makes the industry less accountable to the public, and it is the public’s interests that are to be protected by the statute. Because of the damages cap, the industry has no incentive to ensure that drivers are insured. Assuming that the automobile rental industry was being held liable for damages that totaled such an amount as to threaten the viability of the industry, then the industry necessarily recognized that the number of uncollectible drivers was causing this problem. The simple solution would be to mandate that drivers are insured, thereby ensuring that victims would have a viable avenue by which to collect damages.
The concurrence asserts that a victim still has a cause of action to recover from the driver of the rented automobile. However, this alternate avenue of recovery belies reality. As discussed, there is no mandate requiring the automobile rental industry to ensure that rental drivers are insured. An automobile rental company can rent to an uninsured driver knowing that a severely injured victim would likely have no way to recover from the driver for any damages caused. Therefore, while the concurrence claims that this is an alternate avenue for recovery, in reality, this avenue is often a dead end.
*454 Thus, because even a cursory review of other available measures indicates that the statute is not precisely tailored to serve a compelling governmental interest, it cannot withstand strict scrutiny. Therefore, the damages cap at issue is unconstitutional.
II. EQUAL PROTECTION AND SUBSTANTIVE DUE PROCESS
Our Constitution states, “No person shall be denied the equal protection of the laws . . . .” Const 1963, art 1, § 2. Further, our Constitution provides, “No person shall... be deprived of life, liberty or property, without due process of law.” Const 1963, art 1, § 17. The test to determine if legislation comports with substantive due process is essentially the same as the test used for equal protection. Shavers v Attorney General, 402 Mich 554, 612-613; 267 NW2d 72 (1978). To resolve a due process or equal protection challenge, this Court must identify the objective that the challenged statute seeks to achieve. O’Brien v Hazelet & Erdal, 410 Mich 1, 13-14; 299 NW2d 336 (1980). The claimed objective of implementing the damages cap is to ensure the continued viability of the automobile rental industry. However, the entire statute’s broader objective “is for the benefit of the public and the prevention of unrecompensed injury . ...” Miller v Manistee Co Bd of Rd Comm’rs, 297 Mich 487, 493; 298 NW105 (1941), overruled in part by Mead v Michigan Pub Service Comm, 303 Mich 168; 5 NW2d 740 (1942).
The statute at issue establishes several classifications, among them it distinguishes between victims who were injured by a motor vehicle and victims injured by a rented motor vehicle. Within this latter classification, the statute also distinguishes between those with severe injuries and those with lesser injuries. Because the classifications and the arbitrary damages cap impermis- *455 sibly interfere with a fundamental right-the right to trial by jury-the legislation is reviewed by strict scrutiny. Harvey v Michigan, 469 Mich 1, 12; 664 NW2d 767 (2003). As explained in section one, the legislation cannot withstand strict scrutiny because, even assuming a compelling governmental interest, it is not precisely tailored.
Further, even evaluating the damages cap under rational-basis review, it is highly suspect. To prevail under rational-basis review, it must be shown that the legislation is “ ‘arbitrary and wholly unrelated in a rational way to the objective of the statute.’ ” Id. at 7, quoting Smith v Employment Security Comm, 410 Mich 231, 271; 301 NW2d 285 (1981). A classification reviewed under “[rational] basis passes constitutional muster if the legislative judgment is supported by any set of facts, either known or which could reasonably be assumed, even if such facts may be debatable.” Harvey, supra at 7.
While a plaintiff bears a heavy burden to rebut the presumption that a statute is constitutional, it is not an insurmountable hurdle. Rational-basis review does not mean that, merely because a crisis is alleged by representatives of an industry, any action taken is a valid and constitutional one.
Regarding the damages cap at issue, there is no indication that past damages awards were threatening the automobile rental industry. Further, a concern over future damages awards and the viability of the automobile rental industry is so tenuous that it is unable to withstand rational-basis scrutiny. Because the damages cap is arbitrary and not rationally related to a legitimate governmental objective, the damages cap violates plaintiffs equal protection and substantive due process rights. No matter the intentions of the Legislature, if a *456 statute improperly contravenes the rights afforded our citizens by the Constitution, we must strike down that legislation.
III. THE CONSTITUTIONALITY OF DAMAGES CAP IN GENERAL
The damages cap in this case differs from other forms of remedies that affect damages awards, such as remittitur, additur, and treble damages. Remittitur, additur, and treble damages are based on the facts presented at trial. See Moore v Spangler, 401 Mich 360, 371, 373; 258 NW2d 34 (1977); Shepard v Gates, 50 Mich 495, 497-498; 15 NW 878 (1883). Remittitur or additur is used only after a court has determined that a party has not received a fair trial because the verdict is clearly or grossly excessive or inadequate. The damages cap in this case, however, is an arbitrary amount that limits recovery regardless of the jury award or the facts presented at trial.
On a broader level, the impetus behind damages caps is that they are necessary to ensure that certain defendants are not driven out of business by runaway jury verdicts. However, our justice system has numerous mechanisms to ensure that verdicts are just. Summary disposition, directed verdict, judgment notwithstanding the verdict, and remittitur are all readily available mechanisms to make certain that verdicts are fair. And, of course, our nation’s centuries-old jury system was designed to ensure a fair trial for all parties. While I do not contend that a damages cap can never be constitutional, we must not blindly accept claims of a crisis made by those who have a distinct interest in seeing liability limited.
Other jurisdictions have also held that damages caps applied to various causes of actions are unconstitutional. In Kansas Malpractice Victims Coalition v Bell, *457 243 Kan 333, 342, 345-346; 757 P2d 251 (1988), overruled in part by Bair v Peck, 248 Kan 824; 811 P2d 1176 (1991), the Kansas Supreme Court stated that when the trial court enters judgment for less than the jury verdict, it “is an infringement on the jury’s determination of the facts, and, thus, is an infringement on the right to a jury trial.” The court further stated:
“Pain and suffering have no known dimensions, mathematical or financial. There is no exact relationship between money and physical or mental injury or suffering, and the various factors involved are not capable of proof in dollars and cents. For this very practical reason the only standard for evaluation is such amount as reasonable persons estimate to be fair compensation for the injuries suffered, and the law has entrusted the administration of this criterion to the impartial conscience and judgment of jurors, who may be expected to act reasonably, intelligently and in harmony with the evidence.” [Bell at 346, quoting Domann v Pence, 183 Kan 135, 141; 325 P2d 321 (1958).]
In Morris v Savoy, 61 Ohio St 3d 684, 690; 576 NE2d 765 (1991), the Ohio Supreme Court found no rational relationship between a medical malpractice damages cap and public health or welfare, and further held that the cap was unreasonable and arbitrary. Numerous other cases have also held that damages caps are unconstitutional. See also Best v Taylor Machine Works, 179 Ill 2d 367, 409; 689 NE2d 1057 (1997) (for a list of jurisdictions); Tenold v Weyerhaeuser Co, 127 Ore App 511, 524-525; 873 P2d 413 (1994); Henderson v Alabama Power Co, 627 So 2d 878, 891 (Ala, 1993), overruled in part Ex parte Apicella, 809 So 2d 865 (Ala, 2001) (“[I]t is improper for the legislature to substitute itself for the jury and to fix an arbitrary, predetermined limit” on the jury’s award.); Brannigan v Usitalo, 134 NH 50, 57; 587 A2d 1232 (1991); Sofie v Fibreboard Corp, 112 Wash 2d 636, 638; 771 P2d 711 (1989); *458 Condemarin v Univ Hosp, 775 P2d 348, 364 (opinion by Durham, J.), 367 (Zimmerman, J., dissenting in part and concurring in part) (Utah, 1989); Lucas v United States, 757 SW2d 687, 690-691 (Tex, 1988); Coburn v Agustin, 627 F Supp 983, 996-997 (D Kan, 1985); Carson v Maurer, 120 NH 925, 940-941, 943-944; 424 A2d 825 (1980) (“It is simply unfair and unreasonable to impose the burden of supporting the medical care industry solely upon those persons who are most severely injured and therefore most in need of compensation.”); Arneson v Olson, 270 NW2d 125, 126, 135 (ND, 1978); Wright v Central DuPage Hosp Ass’n, 63 Ill 2d 313, 329-330; 347 NE2d 736 (1976).[3]
The breadth of decisions from jurisdictions around our nation should givé us pause before we allow dubious allegations to erode our citizens’ constitutional rights. No industry should be allowed to shift its burden of responsibility and accountability to the shoulders of the severely injured merely because it claims to be in crisis.
IV CONCLUSION
Thomas Jefferson considered trial by jury to be “the only anchor ever yet imagined by man, by which government can be held to the principles of its constitution.”[4] Today, the majority casts our citizens adrift by finding their constitutional rights are expendable *459 merely because of an alleged “crisis” in the automobile rental industry. The majority merrily “steer[s] our economic regulation jurisprudence,” ante at 438, into the mainstream, while ignoring the citizens who are severely injured along the way. Therefore, I must respectfully dissent. I would reverse the decision of the Court of Appeals because the damages cap violates plaintiffs fundamental right to a jury trial, as well as plaintiffs equal protection and substantive due process rights.
KELLY, J., concurred with CAVANAGH, J.

 MCL 257.401(3), covering civil actions and the liability of a lessor of a motor vehicle, states the following:
*450 Notwithstanding subsection (1), a person engaged in the business of leasing motor vehicles who is the lessor of a motor vehicle under a lease providing for the use of the motor vehicle by the lessee for a period of 30 days or less is hable for an injury caused by the negligent operation of the leased motor vehicle only if the injury occurred while the leased motor vehicle was being operated by an authorized driver under the lease agreement or by the lessee’s spouse, father, mother, brother, sister, son, daughter, or other immediate family member. Unless the lessor, or his or her agent, was negligent in the leasing of the motor vehicle, the lessor’s liability under this subsection is limited to $20,000.00 because of bodily injury to or death of 1 person in any 1 accident and $40,000.00 because of bodily injury to or death of 2 or more persons in any 1 accident.

 While the majority uses a scholarly article written in the Harvard Law Review to support its position, I believe that cases decided by justices from this Court are more persuasive in determining the rights of Michigan citizens. The majority does cite two Michigan cases—May v Goulding, 365 Mich 143, 148-149; 111 NW2d 862 (1961), and McClelland v Scholz, 366 Mich 423, 426; 115 NW2d 120 (1962)—for the unremarkable proposition that a jury cannot decide an issue of law. However, the cases cited have nothing to do with the issue of the jury determining damages. None of the questions submitted to the jury in May and McClelland that were deemed improper by this Court had anything to do with damages.
I also vehemently disagree with the majority that “the right of trial by jury” is a “technical legal phrase” that is to he determined “as understood by those learned in the law at the time.” Ante at 425. The primary rule of constitutional interpretation is “common understanding.” Macomb Co Taxpayers Ass’n v L’Anse Creuse Pub Schools, 455 Mich 1, 6; 564 NW2d 457 (1997). “A constitution is made for the people and by the people. The interpretation that should be given it is that which reasonable minds, the great mass of the people themselves, would give it.” Id., quoting Livingston Co v Dep’t of Management & Budget, 430 Mich 635, 642; 425 NW2d 65 (1988) (quoting Cooley’s Const Lim 81) (quotation marks deleted).

 Although many of these deal with damages caps in medical malpractice cases, the fact that the caps have been deemed unconstitutional is relevant to the issue in this case. The medical “crisis” that has led to medical malpractice damages caps being enacted has received much more study than the alleged crisis in the automobile rental industry. Yet, as the above cases indicate, numerous jurisdictions have rejected the arguments that the damages caps are constitutional or necessary.

 Thomas Jefferson, Letter to Thomas Paine, July 11,1789. Wulffrith’s Quotations, <http://geocities.com/wulfffith_47/Quotes_tj.html> (accessed May 20, 2004).